**GLENBOROUGH NEW MEXICO ASSOCIATES, a California Limited Partnership; Glenborough Ocotillo Associates, a California Limited Partnership; Bos Associates, a California Limited Partnership; University Center Joint Venture, a New Mexico General Partnership; Glenborough Corporation, a California Corporation; 555 Laurel Avenue Corporation, to Glenborough Development Corporation, a California Corporation, and Fama Management, Inc., a California Corporation, Plaintiffs,**

**v.**

**RESOLUTION TRUST CORPORATION, as Receiver for ABQ Bank, a Federal Savings Bank, formerly known as Albuquerque Federal Savings and Loan Association; Resolution Trust Corporation as Receiver for ABQ Federal Sav-**

ings Bank, a Federal Savings Bank, successor in interest to ABQ Bank; ABQ Development Corporation, a New Mexico Corporation; and Ocotillo West Joint Venture, an Arizona Partnership, Defendants.

No. Cv–91–0385 JP/RWM.

United States District Court,
D. New Mexico.

May 26, 1992.

On Reconsideration July 15, 1992.

George D. Giddens, Jr., Behles–Giddens Law Firm, Albuquerque, N.M., for plaintiffs.

Robert J. Muehlenweg, Christopher M. Moody, Nicholas F. Persampieri, Poole, Kelly & Ramo, Albuquerque, N.M., Dean Robert Brenner, Verner, Lupert, Bernhard, McPherson & Hand, Washington, D.C., for defendants Resolution Trust Corp. and Ocotillo West Joint Venture.

Nicholas R. Gentry, Oman, Gentry, Yntema & Stotts, David N. Hernandez, Hernandez & Holt, Albuquerque, N.M., Thomas Dethlefs, Anthony Burt, Hopkins & Sutter, Chicago, Ill., for defendant ABQ Development Corp.

## MEMORANDUM OPINION AND ORDER

PARKER, District Judge.

The subjects of this memorandum opinion and order are: (1) defendant Resolution Trust Corporation's ("RTC"), as receiver for both ABQ Bank ("Old ABQ") and ABQ Federal Savings Bank ("New ABQ"), motion to dismiss, filed April 22, 1991 and defendant RTC's renewed motion to dismiss filed April 22, 1992; (2) defendant ABQ Development Corporation's ("ABQ D") motion to dismiss and for summary judgment, filed April 26, 1991; (3) plaintiffs' motion to strike affidavit of Charles Mann, filed May 13, 1991; (4) defendant RTC's motion for cancellation of notice of lis pendens, filed May 17, 1991 and defendants' emergency joint motion to expunge all notices of lis pendens and to direct plaintiffs not to file any other lis pendens, filed April 22, 1992 along with defendants' motion to exceed page limit in supporting brief, also filed April 22, 1992; (5) plaintiffs' motion for appointment of receiver for ABQ D or for other interim relief, filed June 26, 1991; (6) plaintiffs' motion for partial summary judgment, filed January 30, 1992, ABQ D's related motion to strike portions of affidavits of Batinovich and Morrow, filed March 27, 1992, and defendant ABQ D's motion for leave to file supplemental memorandum in response, filed April 22, 1992; (7) plaintiffs' motion for leave to file amended complaint, filed March 9, 1992, plaintiffs' motion to strike RTC's response to motion for leave to file amended complaint and for sanctions, filed April 7, 1992, and defendant RTC's motion for sanctions against plaintiffs, filed April 24, 1992.

After careful consideration of the pleadings, facts and law, and having heard extensive oral arguments of counsel on April 30, 1992, I have decided that (1) all claims against RTC should be dismissed and count XI should be dismissed in its entirety; (2) ABQ D's motion to dismiss should be granted in part and denied in part; (3) plaintiffs' motion to strike the original affidavit of Charles Mann should be granted; (4) all of plaintiffs' notices of lis pendens should be canceled and defendants' motion to file brief in excess of page limit should be granted; (5) plaintiffs' motion for appointment of receiver for ABQ D should be denied; (6) plaintiffs' motion for partial summary judgment should be denied, ABQ D's motion to strike portions of affidavits of Batinovich and Morrow should be denied, and ABQ D's motion for leave to file supplemental response should be denied; (7) plaintiffs' motion for leave to file amended complaint should be denied as moot, plaintiffs' motion to strike RTC's response and for sanctions should be denied, and RTC's motion for sanctions against plaintiffs should be denied.

On February 26, 1991, plaintiffs filed, in the Second Judicial District Court of the

State of New Mexico, a complaint for debt, money due, breach of contract, tying, fraud, negligent misrepresentation, fraudulent conveyance, recision, breach of fiduciary duty, dissolution of partnership and damages. Previously, on March 16, 1990, the Office of Thrift Supervision ("OTS") of the Department of the Treasury had declared ABQ Bank insolvent and had appointed RTC receiver for ABQ Bank. Also on March 16, 1990, OTS chartered New ABQ and appointed RTC conservator for New ABQ. On March 1, 1991, OTS declared New ABQ insolvent and appointed RTC receiver for New ABQ. On March 28, 1991, defendant RTC timely filed a notice of removal to Federal District Court pursuant to Article III of the United States Constitution and 12 U.S.C. § 1441a(*1*)(1) and a(*1*)(3).

Plaintiff Glenborough New Mexico Associates ("GNMA") is a California limited partnership whose general partner, plaintiff Glenborough Corporation ("GC"), is a California Corporation. Plaintiff BOS Associates, a California limited partnership, is the major limited partner of GNMA. Plaintiff Glenborough Ocotillo Associates ("GOA") is a California limited partnership whose general partner was plaintiff Glenborough Development Corporation ("GDC") until 555 Laurel Avenue Corporation replaced GDC as general partner of GOA. Plaintiff FAMA is a limited partner of GNMA.

GNMA originally engaged in financial negotiations with defendants ABQ Bank and ABQ D (which was a wholly owned subsidiary of ABQ Bank) in order to fund a master ground lease in a business park which GNMA had entered into with the University of New Mexico. First Amended Complaint (hereinafter "Complaint"), ¶ 14. Eventually, ABQ Bank and ABQ D agreed to provide financing to GNMA if ABQ D could become a co-venturer in the business park project and if GNMA would purchase property in Chandler, Arizona, from defendant Ocotillo West Joint Venture ("OWJV"), an Arizona joint venture partnership of which ABQ D was managing venture partner. Complaint, ¶ 16.

A series of agreements were entered into in December 1988 by and among ABQ D, ABQ, FAMA, GNMA, BOS, GC, GDC and GOA to effectuate the transaction. Complaint, ¶ 16. Also in December of 1988, ABQ D, GNMA, and FAMA formed a joint venture called the University Center Joint Venture ("UCJV"), a New Mexico general partnership, and a plaintiff in this action, in order to acquire GNMA's leasehold interest in the business park master ground lease, and to develop, improve, operate, manage, lease and dispose of that property. Complaint, ¶ 17. UCJV acquired GNMA's interest in the master ground lease pursuant to a written joint venture agreement. Complaint, ¶ 17. In this agreement, UCJV agreed to pay a $1,500,000 note owed by GNMA to GC which was secured by a deed of trust encumbering GNMA's leasehold interest. Complaint, ¶¶ 18–19. At the same time, ABQ D also agreed to make a line of credit available to UCJV in the principal amount of $6,000,000 by executing a line of credit loan agreement between UCJV (borrower) and ABQ D (lender). Complaint ¶¶ 22 and 24.

As stated above, ABQ D and ABQ Bank conditioned their loan commitments and financing to UCJV on GDC purchasing property owned by OWJV in Chandler, Arizona. Complaint, ¶ 29. GDC, which is wholly owned by BOS, therefore formed GOA to purchase the OWJV property. Complaint, ¶ 30. On December 28, 1988, GOA, as purchaser, and OWJV, as seller, executed a real estate purchase agreement regarding the Chandler property under the terms of which GOA agreed to put $1.4 million down (via financing provided by ABQ Bank to BOS), and sign a $4.5 million promissory note payable to OWJV. Complaint, ¶ 31. Also on December 28, 1988, OWJV assigned the $4.5 million promissory note to ABQ Bank. Complaint, ¶ 33.

Following the execution of these written loan documents, GNMA made demand upon ABQ D for funding in accord with the agreements, but ABQ D never provided the funding. Complaint, ¶¶ 45, 46, 48, 49 and 51. Old ABQ and later New ABQ allegedly controlled all actions of ABQ D, and Old ABQ and New ABQ caused ABQ D to fail

to advance the funding required under the agreements. Complaint, ¶¶ 39, 46, 49, and 54.

Plaintiffs are suing ABQ D in all counts in the amended complaint. Plaintiffs' Memorandum in Response to RTC's Motion to Dismiss ("Plaintiffs' Response"), p. 1. Old ABQ is being sued under counts VII, VIII, IX, XI, XIII, XIV, and XV in the amended complaint, and New ABQ and OWJV are being sued in counts VIII, IX, XI and XV in the amended complaint. Plaintiffs' Response, p. 1.[1]

*Defendant RTC's motions to dismiss*

■ RTC as receiver for ABQ Bank ("Old ABQ") and as receiver for ABQ Federal Savings Bank ("New ABQ") has moved, pursuant to Rule 12(b)(1) of the Rules of Civil Procedure, to dismiss all claims brought against the RTC for lack of subject matter jurisdiction. Alternatively, the RTC has moved, pursuant to Rule 12(b)(6) of the Rules of Civil Procedure to dismiss each of plaintiffs' claims for failure to state a claim upon which relief can be granted. The claims against the RTC are tying (count VII), breach of good faith and fair dealing (count VIII), prima facie tort (count IX), fraudulent conveyance (count XI), misrepresentation (counts XIII and XIV), and rescission (count XV). Because I find that I do not have subject matter jurisdiction over the RTC, I conclude that all claims against the RTC should be dismissed pursuant to Rule 12(b)(1).

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") sets forth procedures for administrative determination by RTC of claims against a failed depository institution ("administrative claims procedures"). 12 U.S.C. § 1821(d)(3)—(13). Defendant RTC argues that because plaintiffs have not submitted any of the claims asserted in this action against the RTC for determination pursuant to the administrative claims procedures, this court lacks subject matter jurisdiction over any of plaintiffs' claims against the RTC. It is now well established that exhaustion of administrative remedies is required before a claim can be brought in this court against the RTC.[2] *See Capital Data Corp. v. Capital Nat. Bank,* 778 F.Supp. 669 (S.D.N.Y.1991); *Resolution Trust Corp. v. Dubois,* 771 F.Supp. 154 (M.D.La.1991); *Decrosta v. Red Carpet Inns Int'l, Inc.,* 767 F.Supp. 694 (E.D.Pa.1991); *Rexam Ltd. Partnership v. Resolution Trust Corp.,* 754 F.Supp. 245 (D.Puerto Rico 1990); *Circle Industries, Div. of Nastasi–White, Inc. v. City Federal Sav. Bank,* 749 F.Supp. 447 (E.D.N.Y.1990), *aff'd,* 931 F.2d 7 (2nd Cir. 1991); *Tuxedo Beach Club Corp. v. City Federal Savings Bank,* 737 F.Supp. 18, 20 (D.N.J.1990).

■ Plaintiffs do not contest the fact that none of their claims have been submitted for administrative review. Instead, they argue that the language of the statute is unconstitutional since private rights should be heard by an Article III court. However, 12 U.S.C. § 1821(d), *et seq.* does not preclude claims being brought in an Article III court. It merely mandates an administrative decision first which is then subject to *de novo* judicial review by an Article III court. Since this statutory scheme affords *de novo* court review, the process provided in 12 U.S.C. § 1821(d) is constitutional. *See Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989); *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

Plaintiffs' strongest argument appears to be that the RTC did not send them the requisite notice of the receivership and

---

1. Ocotillo West Joint Venture has filed bankruptcy and all claims against it were stayed on April 22, 1991.

2. 12 U.S.C. § 1821(d)(6)(B) provides
 If any claimant fails to—
 (i) request administrative review of any claim in accordance with [this section]; or

 (ii) file suit on such claim (or continue an action commenced before the appointment of the receiver)
 before the end of the 60 day period described in subparagraph (A), the claim shall be deemed to be disallowed ... such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim.

thus, they are excused from the exhaustion of administrative remedies requirement. The administrative claims procedures are initiated by the RTC's publication of a notice to the failed depository institution's creditors. 12 U.S.C. § 1821(d)(3)(B)(i). The notice directs creditors to present their claims to the RTC by a date specified in the notice not less than ninety days after publication. *Id.* RTC then must republish the notice either one or two months after the initial publication. 12 U.S.C. § 1821(d)(3)(B)(ii). If a claim is filed within the period prescribed by the notice, the RTC is directed to allow or disallow the claim within 180 days after the claim is filed and to notify the claimant of its determination. 12 U.S.C. § 1821(d)(5)(A)(i). If a claim is not filed within the period prescribed in the notice, the claim is disallowed and the disallowance is final. 12 U.S.C. § 1821(d)(5)(C)(i). Suit, for *de novo* review, must be filed within sixty days after notice of disallowance, or if the RTC fails to notify the claimant of its determination within the 180 day period prescribed by § 1821(d)(5)(A)(i), within sixty days after the expiration of the 180 day period. 12 U.S.C. § 1821(d)(6)(A).

Shortly after Old ABQ was closed, the RTC, as receiver for Old ABQ, published in the *Albuquerque Journal* and the *Albuquerque Tribune* notice to Old ABQ's creditors. Brookman Aff., ¶ 6. The notice directed creditors to present their claims against Old ABQ to the RTC before July 16, 1990. Brookman Aff., ¶ 7. Plaintiffs have not submitted any of the claims asserted in this action to the RTC for administrative determination. Brookman Aff., ¶¶ 8–9. At this time, if plaintiffs were to submit their claims for administrative review, such claims would be automatically barred due to untimeliness. 12 U.S.C. § 1821(d)(5)(C)(i).

Plaintiffs do not contest that this notice was published but submit that they, as out-of-state creditors, never received written notice of the administrative claims procedures as required by 12 U.S.C. § 1821(d)(3)(C). Furthermore, plaintiffs assert that they, through their attorneys, informed the defendants (including the RTC)

of their claims and engaged in a written communication with all defendants in regard to those claims. Yost Aff. At a May 30, 1990 meeting of the parties, RTC representatives were present but they did not mention the requirement that plaintiffs submit their claims for administrative review. Yost Aff. I am troubled that defendants did not mail plaintiffs the requisite notice and that plaintiffs and defendants entered into settlement negotiations in which defendants did not inform plaintiffs of the need to pursue administrative remedies and now it is too late for plaintiffs to do so. In *Meliezer v. RTC*, 952 F.2d 879 (5th Cir.1992), the Fifth Circuit was faced with the identical situation of out-of-state creditors contending that the exhaustion of administrative remedies was not required because the RTC did not comply with the mailing requirement in 12 U.S.C. § 1821(d)(3)(C)(ii). However, the court held that the RTC did not waive the statutory exhaustion requirement by failing to mail notice of plaintiffs' right to present claims. *Id.* *Meliezer* noted the United States Supreme Court's view that it "would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake." *Brock v. Pierce County*, 476 U.S. 253, 260, 106 S.Ct. 1834, 1839, 90 L.Ed.2d 248 (1986) (cited in *Meliezer*, 952 F.2d at 883).

 Another District Court, when faced with a similar dilemma in a Federal Tort Claims suit involving the Veterans' Administration, found that the court had no choice but to dismiss since pursuance of administrative remedies was an absolute prerequisite to federal jurisdiction.

It is unfortunate that the government did not raise this question [earlier] so that [plaintiff] would have had an opportunity to pursue the prerequisite administrative remedy in a timely manner. Although it may seem unjust to even consider the government's motion [to dismiss] at this point, the Court has no choice in the matter. The administrative prerequisite to suit set forth in [the Federal statute]

has been strictly construed and is considered an absolute and unwaiveable jurisdictional requirement ... This court has no power to excuse a condition precedent to federal jurisdiction regardless of the reason the condition was not met.

*Swizdor v. United States*, 581 F.Supp. 10, 11–12 (S.D.Iowa 1983). I conclude that all of plaintiffs' claims against the RTC, except those assessed in count XI, should be dismissed since plaintiffs failed to exhaust their administrative remedies as required by FIRREA.[3]

■ Plaintiffs assert that even if all other claims against the RTC are dismissed, count XI should not be since this claim against the RTC for fraudulent conveyance involves fraudulent transfers made by ABQ D to old ABQ and/or new ABQ after the RTC became receiver of old ABQ. RTC became receiver of Old ABQ on March 16, 1990 and of New ABQ on March 1, 1991. The alleged fraudulent transfers were made by ABQ D to Old ABQ and/or New ABQ on April 16, 1990, April 13, 1990, and July 3, 1990. Complaint, ¶¶ 105–114. According to plaintiffs, count XI should not be dismissed because the administrative procedures discussed above were not intended to address post-receiver claims against the RTC. This argument was rejected by the Third Circuit in *Rosa v. RTC*, 938 F.2d 383, 392–393 (3rd Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991). Plaintiffs argue that I am not controlled by decisions of the Third Circuit. However, even if I were to agree with plaintiffs' position, count XI should still be dismissed because the New Mexico Fraudulent Transfer Act is preempted by the extensive regulatory provisions of FIRREA, *see* 12 U.S.C. § 1821(d), § 1821(i) and § 1825(b), which do not allow for non-monetary relief. *See* 12 U.S.C. §§ 1821(d)(6) and 1821(d)(10).

Injunctive relief is specifically barred by FIRREA. For example, 12 U.S.C. § 1821(j) provides:

> Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers of functions of the Corporation [i.e. the RTC] as conservator or a receiver.

12 U.S.C. § 1821(d)(13)(C) provides:

> No attachment or execution may issue by any court upon assets in the possession of the receiver.

Furthermore, even if plaintiffs prove their claims against the RTC, federal law mandates that they only would be entitled to a pro rata share of the assets of the failed institution and only when the RTC makes payments to claimants. 12 U.S.C. § 1821(d)(6) and 1821(d)(10). Thus, count XI is not allowed by FIRREA since under count XI plaintiffs request only non-monetary relief. Count XI should be dismissed in its entirety under FIRREA. Therefore, I conclude that all claims against the RTC as a receiver for Old ABQ and New ABQ should be dismissed.

*Defendant ABQ D's motion to dismiss and for summary judgment*

Although defendant ABQ D, at the April 30, 1992 hearing, withdrew its previous argument that plaintiffs' failure to exhaust their administrative remedies divests this court of subject matter jurisdiction over the claims against ABQ D, there is still reason, pursuant to the common law *D'Oench* doctrine, to dismiss certain claims against ABQ D. ABQ D was a wholly owned subsidiary of Old ABQ and then of New ABQ. Upon appointment as receiver for Old ABQ, the RTC acquired all stock of ABQ D as an asset or investment. Second Affidavit of Charles Mann.

■ Even if the administrative claims procedures of FIRREA do not apply to

---

**3.** Plaintiffs further argue that defendants should be estopped from raising any exhaustion of administrative remedies requirement since they failed to provide notice. However, doctrines of waiver and estoppel do not apply to subject matter jurisdictional requirements and lack of

subject matter jurisdiction can be raised any time, even by the court. *see Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982).

wholly owned subsidiaries of failed institutions, the *D'Oench* doctrine, now codified in 12 U.S.C. § 1823(e), does apply to a wholly owned subsidiary of a failed institution. *Victor Hotel Corp. v. FCA Mortg. Corp.*, 928 F.2d 1077 (11th Cir.1991); *Astrup v. Midwest Fed. Sav. Bank*, 886 F.2d 1057 (8th Cir.1989); *FDIC v. Hoover–Morris Enter.*, 642 F.2d 785 (5th Cir.1981); *FDIC v. Smith*, 466 F.Supp. 843 (N.D.Ga.1979). Thus, after considering the purpose behind the *D'Oench* doctrine, I will next examine plaintiffs' claims against ABQ D in order to determine which, if any, of these claims should be dismissed.

In *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 459, 62 S.Ct. 676, 680, 86 L.Ed. 956 (1942), the Supreme Court held that in litigation between a bank customer and the FDIC, as successor in interest to a bank, the customer may not rely on agreements outside the documents contained in the Bank's records to defeat a claim of the FDIC. This doctrine has been developed over the years and, as one court stated, the rule that has emanated is as follows:

> In a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records.

*Baumann v. Savers Federal Sav. & Loan Assoc.*, 934 F.2d 1506, 1515 (11th Cir.1991). Because 12 U.S.C. § 1823(e) is the "statutory codification of *D'Oench*," *Id.* at 1513; *FDIC v. Aetna Cas. & Sur. Co.*, 947 F.2d 196, 200 (6th Cir.1991), the language and purpose of Section 1823(e) are helpful in understanding the *D'Oench* doctrine. 12 U.S.C. § 1823(e) provides:

> No agreement which tends to diminish or defeat the interest of the Corporation [FDIC or RTC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—(1) is in writing, (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution.

In *Langley v. FDIC*, 484 U.S. 86, 91, 108 S.Ct. 396, 399, 98 L.Ed.2d 340 (1987), the Supreme Court noted that the primary purpose of Section 1823(e) is "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. Such evaluations are necessary when a bank is examined for fiscal soundness by state or federal authorities ... and when the FDIC is deciding whether to liquidate a failed bank ... or to provide financing for purchase of its assets ... by another bank ...." "Section 1823(e) applies only to assets which the FDIC [or, today, the RTC] has acquired." *Federal Deposit Ins. Corp. v. Nemecek*, 641 F.Supp. 740, 743 (D.Kan.1986). "The language of the statute [12 U.S.C. § 1823(e)] is all encompassing; any agreement is subject to the statute if it tends to defeat or diminish FDIC's rights in an asset purchased under authority of § 1823." *Federal Deposit Ins. Corp. v. Hoover–Morris Enterprises*, 642 F.2d at 787. The Tenth Circuit has ruled that the *D'Oench* doctrine should not be limited to the FDIC. "Although that statute [§ 1823(e)], which codifies the principles established in *D'Oench* by its terms applies only to the FDIC, the *D'Oench* doctrine survives as an independent basis for protecting the FSLIC from undisclosed agreements." *Mainland Savings Assn. v. Riverfront Assoc., Ltd.*, 872 F.2d 955 (10th Cir.), *cert. denied* 493 U.S. 890, 110 S.Ct. 235, 107 L.Ed.2d 186 (1989). Considering the purpose behind the *D'Oench* doctrine, it is only logical that the

*D'Oench* doctrine would also apply to wholly owned subsidiaries of banks for which the RTC has become receiver.

In *Victor Hotel Corp. v. FCA Mortg. Corp.,* 928 F.2d 1077 (11th Cir.1991), the court held that the *D'Oench* doctrine did apply to the FCA Mortgage Company, a subsidiary of a federally insured banking institution for which the RTC had been appointed receiver. The court relied on the reasoning in *Hoover–Morris* which found that the *D'Oench* doctrine is "all encompassing" and applies to any agreement that "tends to defeat or diminish [the RTC's] right to an interest" in receivership. 642 F.2d. at 787.

Thus, the actual parties to the loan agreement is [sic] irrelevant in determining the applicability of *D'Oench.* FCA came within the scope of *D'Oench* once FSLIC became receiver of Old American and acquired all of Old American's assets including FCA and the loan in question.

*Victor Hotel,* 928 F.2d at 1083 (cites omitted). I concur with the reasoning in *Victor Hotel* and find that *D'Oench,* and thus Section 1823(e), apply to ABQ D, a wholly owned subsidiary of a failed institution under RTC receivership.

■ Defendant ABQ D argues that if I find that *D'Oench* applies to ABQ D, then I must dismiss plaintiffs' claims against ABQ D based on the "implicit duty of good faith and fair dealing" (count VIII), prima facie tort (count IX), fiduciary duty (count X), and misrepresentation (counts XIII, XIV, and XV). Relying on the Supreme Court's guidance in *Langley,* the courts of appeals for the Tenth and Eleventh Circuits have held that Section 1823(e) and the *D'Oench* doctrine bar claims based on alleged unwritten fraudulent acts or words of the failed institution or its wholly owned subsidiary. *See Federal Deposit Ins. Corp. v. Galloway,* 856 F.2d 112 (10th Cir. 1988) (Section 1823(e) held to bar "fraud in the inducement" defense); *Victor Hotel,* 928 F.2d 1077 (Section 1823(e) found to preclude breach of contract, restitution and fraudulent inducement claims against wholly owned subsidiary of failed institution); *FDIC v. Bell,* 892 F.2d 64 (10th Cir.1989)

(court finds no reason to apply Section 1823(e) to one form of fraud but not another; Section 1823(e) found to apply to alleged failure to disclose a material fact). *See also Estate of Rains v. FDIC,* 702 F.Supp. 1520 (D.Kan.1988) (Section 1823(e) applies to all promises and conditions relating to signing of note). The court of appeals for the Eighth Circuit reached a contrary conclusion. *Astrup v. Midwest Federal Sav. Bank,* 886 F.2d 1057 (8th Cir. 1989) (*D'Oench* doctrine does not apply to tort claims against a financial institution thus court upheld claim for breach of fiduciary duty against a co-venturer). Based on the decision in *Langley,* and the applicable case law in the Tenth Circuit, ABQ D's motion to dismiss counts VIII, IX, X, XIII, XIV and XV should be granted.

*Plaintiffs' motion to strike affidavit of Charles Mann*

■ Defendant ABQ D filed the original affidavit of Charles Mann in support of its motion to dismiss or for summary judgment. Plaintiffs moved to strike that original affidavit on the grounds that the affidavit does not affirmatively show that the affiant is competent to testify and that the testimony is based on his personal knowledge. Further plaintiffs contest certain statements in the affidavit which plaintiffs contend are legal conclusions, to wit, that ABQ D is a wholly owned subsidiary or asset of the RTC. Plaintiffs assert that the affiant would not be permitted to make such statements at trial and that such evidence would have to be proven by introduction of stock certificates and other corporate records.

Defendant ABQ D has responded to plaintiffs' motion to strike, in part, by filing a second affidavit of Charles Mann which at least states that he is over the age of 18 and is testifying about matters of which he has personal knowledge. Apparently, Charles Mann is the current president and a member of the Board of Directors of ABQ D. He states that he has reviewed the corporate stock records of ABQ D which are in possession of the Federal Home Loan Bank and copies are attached to his second affidavit. The rec-

ords indicate, as he states, that all of the stock of ABQ D was owned by Federal Savings and Loan Association which later became ABQ Federal Savings Bank (Old ABQ).[4]

I find that the second affidavit of Charles Mann meets the requirements set forth in Federal Rule of Civil Procedure 56. Thus, the first affidavit of Charles Mann should be stricken and the second affidavit of Charles Mann should be used in its place.

*Motions for cancellation of notices of lis pendens* [5]

On March 1, 1991, plaintiffs filed a Notice of *Lis Pendens* in the Office of the Clerk of Dona Ana County which encumbers certain property, known as the "High Range Property" in Dona Ana County. On March 10, 1992, plaintiffs filed a Notice of *Lis Pendens* against several properties in Bernalillo County. The properties which are the subjects of both notices are only involved in count XI (fraudulent transfer) of the complaint. Count XI alleges that ABQ D fraudulently transferred a mortgage interest in the properties to Old ABQ Bank and/or New ABQ. Plaintiffs agree that if I decide to dismiss count XI in its entirety, then the notices of *lis pendens* should be canceled. Thus, due to the dismissal of count XI, the notices of *lis pendens* should be canceled and no further recordings of notices of *lis pendens* against property titled in ABQ D should be permitted since such notices impede the RTC from carrying out its statutory duties.

However, plaintiffs argue that the RTC's statutory duties only include the sale of assets which the RTC lawfully acquired, which is not the case here, since, plaintiffs allege, the RTC conspired with a failing thrift to fraudulently acquire assets of ABQ D. Further, plaintiffs argue that the property is owned by ABQ D, not by the RTC. Finally, plaintiffs assert that cancellation of the notices of *lis pendens* should be conditioned on the establishment of an escrow or the posting of a bond.

Due to the notices of *lis pendens*, the RTC cannot carry out its statutory duties to collect obligations owed the failed financial institution, preserve and conserve the failed institution's assets and transfer its assets. Upon the RTC's appointment as receiver for Old ABQ and New ABQ, the RTC succeeded by operation of law to all rights, titles, powers and privileges of the failed banks, acquired control of the assets of the failed banks, and acquired the power to sell or transfer assets of the failed banks. 12 U.S.C. § 1821(d)(2)(A), (B), (E), (G)(i)(II). Since ABQ D is a wholly owned subsidiary of Old and New ABQ, it is now within the control of the RTC and the RTC is authorized to transfer or sell any assets of ABQ D, including its property.

Numerous courts have held that state law restrictions on asset transfers are preempted by federal law governing the RTC's or FDIC's liquidation of failed depository institutions. *FDIC v. Bank of Boulder*, 911 F.2d 1466 (10th Cir.), *cert. denied* — U.S. —, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1990) (Colorado statute restricting transfer of letters of credit does not restrict the transfer of letters of credit from FDIC, as receiver for a failed bank, to FDIC, in its corporate capacity, in furtherance of a bank liquidation); *NCNB Texas Nat. Bank v. Cowden*, 895 F.2d 1488 (5th Cir.1990) (state law restrictions on transfer of fiduciary appointments of insolvent bank preempted); *FDIC v. Hudson*, 643 F.Supp. 496 (D.Kan.1986) (FDIC, as receiver for failed bank may assign tort claims not assignable under state law); *FDIC v. Shain*, 944 F.2d 129 (3rd Cir.1991) (FIRREA preempts application of state common law attorney's retaining lien to files of failed bank). I conclude that defendants' motions to cancel all notices of *lis pendens* should be granted since I have concluded that count XI should be dismissed in its entirety

---

**4.** Defendant ABQ D also submitted the affidavit of Anthony B. Infantino, an employee of Bank of American and former Vice President of ABQ Federal Savings Bank (Old ABQ). His affidavit, along with copies of ABQ D stock records which he had in his possession and attached to his affidavit, also show that ABQ D was a wholly owned subsidiary of Old ABQ.

**5.** Defendants' motion for leave to file brief in excess of page limitation on their emergency joint motion is well taken and should be granted.

because it is preempted by FIRREA and FIRREA does not allow for injunctive relief and because the notices of *lis pendens* prevent the RTC from carrying out its statutory duties. Requiring the RTRC to establish an escrow or post a bond would be inconsistent with the statutorily mandated duties of the RTC which must be performed in an unimpeded manner.

*Plaintiffs' motion for appointment of receiver for ABQ D or for other interim relief*

■ Plaintiffs have moved for the appointment of a receiver to take possession and control of the assets of ABQ D due to the alleged fraudulent transfers which ABQ D has made and which plaintiff alleges are part of a "comprehensive scheme" to transfer all of its assets to its parent corporation, Old ABQ, and its successors and assigns, including New ABQ. Basically, plaintiffs argue that ABQ D has "upstreamed" its assets to the RTC in violation of the New Mexico Fraudulent Transfer Act, § 56–10–14 *et seq.*, N.M.Stat.Ann.1978 (1990 Supp.).

Defendants repeat their argument that this court does not have subject matter jurisdiction over plaintiffs' claims, and also again argue that the requested injunctive relief is barred completely by 12 U.S.C. § 1821(j) and § 1821(d)(13)(C) to the extent that it would result in the attachment of assets and that the New Mexico Fraudulent Transfer Act is preempted by Federal law which prevents interference in any way with the RTC's powers to dispose of assets of the failed savings banks. Having already found that plaintiffs' count XI should be dismissed since it is preempted by FIRREA and FIRREA does not allow for nonmonetary relief, including any type of injunctive relief, I find that plaintiffs' motion for appointment of a receiver should be denied.

*Plaintiffs' motion for partial summary judgment, ABQ D's motion to strike and ABQ D's motion for leave to file a supplemental memorandum in response to plaintiffs' motion for partial summary judgment*

Plaintiffs have moved for summary judgment against ABQ D on counts I through V of the amended complaint. Counts I—III allege breach of the Line of Credit Loan Agreement. Count IV alleges anticipatory repudiation of the UCJV agreement. Count V alleges that ABQ D breached the express provisions of the UCJV Agreement. Plaintiffs submitted affidavits of Robert Batinovich, Richard Ferrell, Frank Morrow and John Brink to establish the material facts in support of their motion. Basically, plaintiffs state that ABQ D breached its contracts with plaintiffs, ABQ D's failure to provide funding constituted an anticipatory breach of the UCJV agreement and these breaches and anticipatory breaches caused damages to plaintiffs, which amount cannot be quantified at this time.

ABQ D moves to strike paragraphs 16 through 31 of Batinovich's affidavit and paragraphs 7 through 11 of Morrow's affidavit because these paragraphs contain "conclusory statements that would be inadmissible as evidence at trial." This motion is petty. ABQ D only discusses two of the many paragraphs to which it objects:

Paragraph 16 of Batinovich's affidavit states:

> UCJV was ready to proceed with the New Mexico Engineering Research Institute project, and had several commitments from other potential tenants which would give the entire project the momentum it needed to be successful.... At the time ABQ D first failed to make required advances under the line of credit agreement UCJV and GNMA were in compliance of all provisions of the agreements between them and ABQ D.

Paragraph 7 of Morrow's affidavit states:

> UCJV has failed to perform its obligations under the Agreement and has failed to make the payments owing to FAMA as required by the Agreement.

I conclude that ABQ D's motion to strike should be denied.

■ Responding to plaintiffs' motion for summary judgment, ABQ D asserts

that University Center Joint Venture ("UCJV") was a joint venture between ABQ D, GNMA and FAMA Management. ABQ D provided a $6 million line of credit in order to begin the project. GNMA and FAMA made non-monetary contributions. Plaintiffs have brought suit because ABQ D ceased funding the line of credit to UCJV. ABQ D states that this failure to fund was not the cause of plaintiffs' losses since the project was not viable and was destined to fail before ABQ D ceased funding it.

ABQ D argues that summary judgment should be denied due to factual disputes. Having considered all of ABQ D's arguments and the facts of this case, I conclude that there are genuine issues of material fact as to why UCJV failed, the responsibilities of various parties, and whether plaintiffs were damaged by ABQ D's actions, all of which preclude granting plaintiffs' motion for partial summary judgment. Defendant ABQ D's motion to file a supplemental response to plaintiffs' motion should be denied as moot.

*Plaintiffs' motion for leave to file amended complaint, plaintiffs' motion to strike RTC's response and for sanctions, and RTC's motion for sanctions against plaintiffs*

In a March 26, 1992 letter, I informed counsel that plaintiffs did not need leave of the court to file an amended complaint since no responsive pleading had yet been filed and, therefore, plaintiffs could amend as of right. Thus, I have already found that plaintiffs' motion for leave to file amended complaint was unnecessary and should be denied as moot. However, after they received the March 26, 1992 letter, plaintiffs moved to strike the RTC's response to plaintiffs' motion for leave and for sanctions. Plaintiffs argue that defendant RTC filed its response after plaintiffs informed defendants that the court was allowing plaintiffs to file an amended complaint. Furthermore, plaintiffs argue that in defendant RTC's response, it argues points totally outside of the issue of amending the complaint—i.e. lack of subject matter jurisdiction, the amendment does not

cure the deficiencies of the complaint, failure to exhaust administrative remedies, and *lis pendens* issues. If this response is not stricken, plaintiffs want to reply. There appears to be no need for plaintiffs to reply to defendant's response since the arguments made therein do not appear to be new or different from arguments which defendant has made in other motion briefing. Thus, since I find that defendant RTC filed the motion in good faith, I find that plaintiffs' motion to strike defendant's response and for sanctions should be denied.

Finally, the RTC's motion for sanctions against plaintiffs, which alleges that plaintiffs did not have a good faith basis to file their motion for sanctions against the RTC, is not well taken and should be denied.

IT IS THEREFORE ORDERED THAT:

(1) defendant RTC's motion to dismiss is GRANTED in full, and all claims against the RTC are hereby dismissed; and count XI is DISMISSED in its entirety;

(2) defendant ABQ D's motion to dismiss is GRANTED in part, to the extent that claims against ABQ D in counts VIII, IX, X, XIII, XIV and XV are dismissed;

(3) plaintiffs' motion to strike the original affidavit of Charles Mann is GRANTED and this affidavit shall be replaced by the second affidavit of Charles Mann;

(4) defendant RTC's motion for cancellation of notice of *lis pendens*, defendants' joint motion to expunge all notices of *lis pendens* and to direct plaintiffs not to file any other *lis pendens* and defendants' motion to file brief in excess of page limit in support of their joint motion are GRANTED;

(5) plaintiffs' motion for appointment of receiver for ABQ D and for other interim relief is DENIED;

(6) plaintiffs' motion for summary judgment is DENIED, defendant ABQ D's motion to strike portions of affidavits of Batinovich and Morrow is DENIED, and defendant ABQ D's motion for leave to file supplemental response to plaintiffs' motion for summary judgment is DENIED;

(7) plaintiffs' motion for leave to file amended complaint is DENIED as moot,

plaintiffs' motion to strike RTC's response to motion for leave to file amended complaint and for sanctions is DENIED, and defendant RTC's motion for sanctions against plaintiffs is DENIED.

## ON MOTION TO RECONSIDER

The subjects of this memorandum opinion and order are plaintiffs' motion, filed June 9, 1992, to reconsider the memorandum opinion and order entered on May 26, 1992 and plaintiffs' motion, filed June 24, 1992, for relief in the nature of mandamus. The facts in this case have been summarized in the May 26 1992 memorandum opinion and order. After careful consideration of the motions, I have determined that both plaintiffs' motion to reconsider and plaintiffs' motion for relief in the nature of mandamus should be denied.

Plaintiffs request that I reconsider my decision to dismiss all claims against the Resolution Trust Corporation ("RTC") and to dismiss count XI in its entirety, and my decision to dismiss certain claims against ABQ Development Corporation ("ABQ D") and not to appoint a receiver for ABQ D. I previously dismissed all claims against the RTC after concluding that I do not have subject matter jurisdiction over claims against the RTC since plaintiffs did not exhaust their administrative remedies, as required by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). Although I have now examined 12 U.S.C. § 1821(d)(3)(C)(ii) more closely than I had previously, along with case law interpreting this section (most of which neither plaintiffs nor defendants brought to my attention), I continue to conclude, assuming that the RTC did not comply with the notice requirements, that I simply do not have subject matter jurisdiction to hear plaintiffs' claims against the RTC unless those claims have first been presented to the RTC through an administrative process.

12 U.S.C. §§ 1821(d)(3)(B) and (C) provide:

**(B) Notice Requirements**
The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall—

(i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice; and

(ii) republish such notice approximately 1 month and 2 months, respectively, after the publication under clause (i).

**(C) Mailing required**
The receiver shall mail a notice similar to the notice published under subparagraph (B)(i) at the time of such publication to any creditor shown on the institution's books—

(i) at the creditor's last address appearing in such books; or

(ii) upon discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address.

§ 1821(d) goes on to provide elaborate administrative claims procedures. § 1821(d)(13)(D) states that "no Court shall have jurisdiction over" any claims except those presented to the Court after exhaustion of the claims procedures. FIRREA does not offer any assistance in determining how to handle the situation presented here, that is, the effect that the RTC's failure to meet the notice requirements of § 1821(d)(3) has on a claimant's obligation to pursue the administrative claims procedures before filing suit in federal court. However, apparently all other courts which have been confronted with the same issue have decided, as I decided in my May 26, 1992 memorandum opinion and order, that despite the harsh result, FIRREA dictates that federal courts do not have subject matter jurisdiction over claims against the RTC that have not first been through the administrative claims procedures. *See Kellett & Sons v. Homes,* 1992 WL 125439 (E.D.La.1992) (court granted RTC's motion to dismiss due to lack of subject matter jurisdiction since plaintiff did not file an

administrative claim with the RTC despite plaintiff's assertion that it did not receive notice; furthermore, court found that due to the lack of subject matter jurisdiction, it was precluded from ruling on plaintiff's contention that defective notice waives the administrative requirement); *RTC v. Wayne Coliseum Limited Partnership,* 793 F.Supp. 900, 902 (D.Minn.1992) ("Even assuming the verity of defendants' allegation that they did not receive proper notice from the RTC [when the RTC had actual notice of claimants' claims against it since the parties were involved in settlement negotiations], the court rejects defendants' waiver argument. There is no statutory provision providing the court with jurisdiction over claims filed after the RTC is appointed receiver but before administrative exhaustion. In addition, the court may not ignore the statutory administrative exhaustion requirement. Thus, as it is undisputed that defendants did not file their claim with the RTC, the court concludes that it lacks subject matter jurisdiction over defendants' counterclaim because the defendants have failed to satisfy their administrative remedies."); *Meliezer v. RTC,* 952 F.2d 879 (5th Cir.1992) (court found that it did not have subject matter jurisdiction while assuming verity of claimants' allegation that RTC did not comply with § 1821(d)(3)(C)(ii)); *Jil Corporation v. RTC,* 1991 WL 148589 (E.D.La.1991) (court rejected argument that RTC violated plaintiff's due process rights by failing to mail notice as required by § 1821(d)(3)(C) and concluded that it did not have subject matter jurisdiction since plaintiff failed to exhaust administrative remedies; court further found that "as there is no subject matter jurisdiction over this action *ab initio,* there cannot be jurisdiction for granting a stay of these proceedings"); *Yumukoglu v. RTC,* 1991 WL 68322 (E.D.La. 1991) (court found that because it lacked jurisdiction due to plaintiff's failure to exhaust administrative remedies, it had no

authority to rule on plaintiff's contentions that the published notice was defective, that he was entitled to notice by mail, and that the notice scheme is unconstitutional); *Marketplace/Ken Caryl Partners, Ltd v. Victorio Investment Company, Ltd,* 778 F.Supp. 29 (D.Colo.1991) (court granted RTC's motion to dismiss for lack of subject matter jurisdiction, rejecting plaintiff's argument that RTC is estopped from asserting lack of subject matter jurisdiction because it did not comply with the notice provision of § 1821(d)(C)(3)(ii) even though the plaintiff contended the RTC had actual knowledge of plaintiff's claim).

Plaintiffs argue that their case is special since the RTC had actual notice of plaintiffs' claims against the RTC and because plaintiffs in this case are raising a procedural due process argument and not merely a "waiver" argument. I conclude that the above cases address plaintiffs' arguments and support my original decision to dismiss all claims against the RTC because I do not have subject matter jurisdiction over these claims. I realize that this result is severe, yet it is unavoidable given the statutory scheme provided by FIRREA.[1]

■ Likewise, I must deny plaintiffs' motion for relief in the form of mandamus. The Mandamus Act, 28 U.S.C. § 1361, "does not supersede other specific statutory provisions." S.Rep. No. 1992, 87th Cong., 2nd Sess., *reprinted in* 1962 U.S.Code Cong. & Ad.News 2784, 2785. Additionally, the Administrative Procedure Act, 5 U.S.C. § 702, does not create an independent basis of jurisdiction. *Eagle-Picher Industries, Inc. v. United States,* 901 F.2d 1530 (10th Cir.1990). Thus, without subject matter jurisdiction over plaintiffs' claims against the RTC, I am not in a position to order the RTC to act.

Finally, plaintiffs present no new arguments or authorities in support of their requests that I reconsider my decision to

---

1. Plaintiffs also argue that the RTC's notice by publication, as required by 12 U.S.C. § 1821(d)(3)(B), was inadequate since it did not provide the minimum 90 day window between the publication of the notice and the date when claims were due. However, this argument does

not bear any weight on my decision that I do not have subject matter jurisdiction since this decision was made with the assumption that the RTC failed to meet the statutory notice requirements.

dismiss certain claims against ABQ D and not to appoint a receiver for ABQ D and my decision to dismiss count XI in its entirety. I see no reason to change my prior decisions on these issues.

IT IS THEREFORE ORDERED that

(1) plaintiffs' motion for reconsideration is DENIED; and

(2) plaintiffs' motion for relief in the nature of mandamus is DENIED.