910 P.2d 329

**GLENBOROUGH CORPORATION, a California corporation, Glenborough Development Corporation, a California corporation, BOS Associates, a California limited partnership, Glenborough Ocotillo Associates, a California limited partnership, and Glenborough New Mexico Associates, a California limited partnership, Plaintiffs–Appellants,**

v.

**SHERMAN & HOWARD, a general partnership, including professional corporations, and Mel E. Yost, Defendants–Appellees.**

No. 15590.

Court of Appeals of New Mexico.

Dec. 8, 1995.

Paul Bardacke, John G. Baugh, Eaves, Bardacke & Baugh, P.A., Albuquerque, for Plaintiffs–Appellants.

Kenneth L. Harrigan, Douglas Baker, Lisa Mann Burke, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for Defendants–Appellees.

## OPINION

ALARID, Judge.

1. Glenborough Corporation, Glenborough Development Corporation, BOS Associates, Glenborough Ocotillo Associates, and Glenborough New Mexico Associates (Plaintiffs) appeal the grant of summary judgment in favor of Sherman & Howard (Defendants) on claims of legal malpractice. The malpractice action arose out of a federal court dismissal of Plaintiffs' claims against certain banks and the Resolution Trust Corporation (RTC). Plaintiffs' tort claims were dismissed for lack of subject matter jurisdiction due to Defendants' failure to file administrative claims. We hold that Plaintiffs could not have prevailed on the merits of their claims in federal court, and therefore we affirm summary judgment in favor of Defendants. In light of this determination, we need not address the collateral estoppel issue.

## BACKGROUND

2. In 1987, Plaintiffs entered into a series of agreements and loan transactions with ABQ Bank (ABQ) and its wholly owned subsidiary ABQ Development (ABQD) to build a business park in Albuquerque. ABQ loaned $1.5 million to Plaintiffs, and ABQD became a joint-venturer with Plaintiffs' development project. ABQD agreed to fund the project in the amount of $6 million over a period of time. Plaintiffs then agreed to pay $5 million for property in Arizona to a company which had ABQD as the managing venture partner. Plaintiffs borrowed another $1.5 million to cover this purchase. Thereafter, ABQD did not provide the promised $6 million in funding.

3. Defendants' legal representation of Plaintiffs began in February 1990, representing Plaintiffs' interest under its notes and contracts with ABQ and ABQD, and any potential litigation with the RTC. ABQ was declared insolvent in March 1990, and the RTC was appointed receiver. The RTC and ABQ sought to enforce the two outstanding promissory notes; however, Plaintiffs countered with defenses based on ABQD's failure to fund the Albuquerque development project.

4. During negotiations, the RTC published a notice in two Albuquerque newspapers pursuant to the Financial Institutional Reform, Recovery, and Enforcement Act (FIRREA), 12 U.S.C. § 1821(d)(3)–(13) (Supp. 1990). The notices directed creditors to present their claims against ABQ and the RTC before July 16, 1990. *See* § 1821(d)(3)(B)(i). Defendants failed to file administrative claims as required under FIRREA, because they had never received personal notice as required under § 1821(d)(3)(C). In February 1991, Plaintiffs sued ABQ and ABQD in federal court, claiming that: ABQD failed to fulfill its contract obligations in New Mexico and Arizona; Plaintiffs were therefore unable to develop their projects and pay off loans from ABQ; and the RTC was unfairly demanding payment on the notes.

5. The tort claims brought in federal court against ABQ and the RTC were dismissed for lack of subject matter jurisdiction

due to Plaintiffs' failure to file administrative claims. *Glenborough N.M. Assocs. v. Resolution Trust Corp.,* 802 F.Supp. 387, 393 (D.N.M.1992). The federal court found that FIRREA required dismissal, regardless of the lack of personal notice to Plaintiffs. *Id.* The claims against ABQD, however, were not dismissed for lack of subject matter jurisdiction. Those claims, which were based upon the same alleged side agreements as the claims against ABQ, were instead dismissed as unenforceable under 12 U.S.C. § 1823(e) (Supp.1990) and the *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), doctrine. *Glenborough,* 802 F.Supp. at 393–95. After the federal court decision, in May 1992, Plaintiffs settled their claims against ABQ, ABQD, and the RTC. Plaintiffs then filed this action for legal malpractice based on the failure of Defendants to file administrative claims against ABQ and the RTC.

6. In September 1993, Defendants filed a motion for summary judgment based on lack of proximate cause and collateral estoppel. In October 1993, Plaintiffs moved to file a first amended complaint. At a December 7, 1993, hearing on a motion to compel, Plaintiffs' counsel inquired about Defendants' objection to the filing of an amended complaint. Defendants withdrew their objection. The district judge then asked Plaintiffs' counsel what effect the amended complaint would have on the summary judgment motion to be heard the next day. Plaintiffs' counsel replied, "[n]ot a thing, same claims."

7. At the December 8, 1993, summary judgment hearing there was no discussion regarding any new claims. On December 10, 1993, the judge sent a letter to counsel for each of the parties that announced his intention to grant summary judgment in favor of Defendants. On December 15, 1993, the first amended complaint was filed. Then, on February 7, 1994, judgment in favor of Defendants was entered. Plaintiffs' motion to reconsider was denied, following oral argument, on March 15, 1994. This appeal followed.

## DISCUSSION

■ 8. To recover on a claim of legal malpractice based on negligence, plaintiffs must prove: (1) the defendant attorneys represented them; (2) the defendant attorneys did not exercise a reasonable duty of care; and (3) that negligence resulted in and was the proximate cause of loss to the plaintiffs. *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor,* 115 N.M. 159, 162–63, 848 P.2d 1086, 1089–90 (Ct.App.), *cert. denied,* 115 N.M. 60, 846 P.2d 1069 (1993). There is no dispute that Defendants were employed by Plaintiffs to represent them in their actions against ABQ, ABQD, and the RTC or that Defendants failed to timely file administrative claims required under FIRREA. Rather, Plaintiffs argue that Defendants' failure to timely file the administrative claims prejudiced their claims. Defendants contend that this non-action had no prejudicial effect on Plaintiffs' claims. Defendants further assert that Plaintiffs could not have won on the merits of their claims against ABQ and the RTC.

■ 9. Summary judgment is to be granted only when there is an absence of any genuine issues of material fact or when a party is entitled to judgment as a matter of law. *Sarracino v. Martinez,* 117 N.M. 193, 194, 870 P.2d 155, 156 (Ct.App.1994). A party opposing summary judgment may not merely argue that facts requiring a trial on the merits may exist or rest upon the allegations of the complaint. *Dow v. Chilili Coop. Ass'n,* 105 N.M. 52, 55, 728 P.2d 462, 465 (1986). Plaintiffs must show that they could have prevailed on the merits of their claims against ABQ and the RTC but for Defendants' negligence. Because there is no evidence to show that Plaintiffs could have prevailed under the *D'Oench* doctrine or § 1823(e), even if Defendants had timely filed, summary judgment was appropriate.

## A. SECTION 1823(e) AND THE *D'OENCH* DOCTRINE

■ 10. Under the rule asserted in *D'Oench,* codified at § 1823(e), the FDIC (in our case, the RTC) is a holder-in-due-course of instruments from an insolvent bank. *See D'Oench,* 315 U.S. at 458, 62 S.Ct. at 679–80. This means that a borrower may only assert claims against the RTC as receiver of a failed bank if the alleged agreements that form the

bases of the claims are: (1) in writing; (2) signed by the parties involved; (3) duly authorized by bank officials; and, (4) continuously maintained in the official bank records. *See* § 1823(e). This development is designed to protect the federal deposit insurer from alleged obligations not clearly delineated in the failed institution's records. *See Glenborough,* 802 F.Supp. at 394.

11. The federal court held that the *D'Oench* doctrine applied to ABQD as the wholly-owned subsidiary of ABQ, for which the RTC had become receiver. *Glenborough,* 802 F.Supp. at 395. Because the administrative filing procedures of FIRREA do not apply to wholly-owned subsidiaries of failed institutions, *id.* at 393–94, the federal court looked to the merits of Plaintiffs' claims against ABQD. Since Plaintiffs could not provide any written documentation supporting their claims of fraudulent acts by ABQD which satisfied the strict requirements of § 1823(e), ABQD's motion to dismiss certain of the tort claims against it was granted. *Glenborough,* 802 F.Supp. at 395.

12. Defendants argue that the failure to file the administrative claims could not have prejudiced Plaintiffs because the claims against ABQ and the RTC were based on the same alleged side agreements as those against ABQD, and therefore could not meet the requirements of *D'Oench* or § 1823(e). Plaintiffs counter that a single document is not required to satisfy *D'Oench* or § 1823(e), and that all documents regarding the transaction may be construed together. *See Resolution Trust Corp. v. Midwest Fed. Sav. Bank,* 4 F.3d 1490, 1501 (9th Cir.1993), *amended,* 36 F.3d 785 (1994); *Oklahoma Radio Assocs. v. Federal Deposit Ins. Corp.,* 987 F.2d 685, 692 (10th Cir.1993); *Federal Deposit Ins. Corp. v. RepublicBank Lubbock, N.A.,* 883 F.2d 427, 429 (5th Cir.1989). Even assuming arguendo Plaintiffs' argument that all the documents should be construed together, the documents collectively do not satisfy the requirement of § 1823(e). Any alleged fraudulent agreements must be clearly delineated in documentation and cannot be merely inferred. *See Castleglen, Inc. v. Resolution Trust Corp.,* 984 F.2d 1571, 1579 (10th Cir.1993). Therefore Plaintiffs could not have won on any of their claims against ABQ or the RTC.

13. Throughout all the protracted litigation in the federal courts and the malpractice action below, Plaintiffs have never been able to produce *any* documentation satisfying § 1823(e). Plaintiffs refer to various documents that they claim satisfy the section, including minutes of ABQD and minutes of ABQ's loan committee. However, there is nothing in these lengthy and confusing documents indicating that any loan was contingent on any other transaction. As stated in *Castleglen,* 984 F.2d at 1579, "Scattered evidence in corporate records from which one could infer the existence of an agreement does not meet the requirements of the statute." Indeed, in this case, the documents do not even amount to evidence from which one could infer any specific agreement. The most that can be inferred from them is that various transactions were undertaken at approximately the same time and in some related fashion.

Plaintiffs also rely on an affidavit from their expert, who read those documents and concluded without satisfactory explanation that they satisfy the *D'Oench* doctrine. Neither the trial court nor this Court is required to accept such conclusions by an expert. *See Four Hills Country Club v. Bernalillo County Property Tax Protest Bd.,* 94 N.M. 709, 714, 616 P.2d 422, 427 (Ct.App.1979) (expert opinion is incompetent without a satisfactory explanation of how it was arrived at), *cert. quashed,* 94 N.M. 675, 615 P.2d 992 (1980). Defendants had moved to strike the affidavit below on this ground, so Plaintiffs were well aware of the nature of the objection and did nothing to correct it. Nor could Plaintiffs explain to us, when specifically asked to do so at oral argument, exactly where in the documents the alleged side agreements were set forth in a way that we, and thus the RTC, could understand them. Therefore, Plaintiffs cannot prove they could win any of their claims against ABQ or the RTC on the merits. Consequently, Plaintiffs suffered no damage from the failure to file administrative claims, and summary judgment was appropriate.

## B. AMENDED COMPLAINT

14. On October 12, 1993, Plaintiffs moved to amend their complaint to include two additional counts of misrepresentation and viola-

tion of New Mexico's Unfair [Trade] Practices Act, NMSA 1978, Sections 57–12–1 to –22 (Repl.Pamp.1987). At the December 7, 1993, hearing on the motion to compel discovery, Defendants agreed to drop their opposition to the amendment, and on December 15, the motion was granted. Plaintiffs then filed their amended complaint. At the motions hearing, Plaintiffs' counsel asserted that the amended complaint would have no effect on the summary judgment motion because it included the "same claims." Thereafter, summary judgment was granted for Defendants.

■ 15. Plaintiffs now assert that it was error for the trial court to grant summary judgment on the additional claims of misrepresentation and Unfair [Trade] Practices Act violations. Plaintiffs cannot now benefit from an error they helped create in asserting that no new claims were to be considered by the trial court at the summary judgment hearing. *See Nichols Corp. v. Bill Stuckman Constr., Inc.,* 105 N.M. 37, 40, 728 P.2d 447, 450 (1986) (litigants may not invite error and then take advantage of it). Plaintiffs also failed to request a continuance of the hearing, reinforcing the fact that no additional, significantly different, claims had been raised. Therefore, summary judgment was properly granted.

### CONCLUSION

16. Plaintiffs could not have prevailed in federal court on the merits of their claims against ABQ and the RTC under § 1823(e) or the *D'Oench* doctrine. In all the protracted litigation below, in both the federal and state actions, Plaintiffs have failed to produce documentation in the record to preclude summary judgment. Any negligence by Defendants in failing to timely file administrative claims did not proximately harm Plaintiffs and therefore does not constitute malpractice. We affirm the trial court's grant of summary judgment.

17. **IT IS SO ORDERED.**

PICKARD and FLORES, JJ., concur.