**RESOLUTION TRUST CORPORATION,
an Instrumentality of the United States Government, as Receiver for Midwest Savings Association, F.A., a Federal Association, Plaintiff,**

v.

**WAYNE COLISEUM LIMITED PARTNERSHIP, an Indiana Limited Partnership, Rochelle Realty Corporation, an Indiana Corporation, Barry Lang, Stuart Lichter and Gerald Wendel, Defendants.**

Civ. No. 4–91–238.

United States District Court,
D. Minnesota,
Fourth Division.

May 15, 1992.

James Joseph Bertrand, Allen Irving Saeks, Leonard Street & Deinard, Minneapolis, Minn., for plaintiff.

Robert R. Weinstine, Steven C. Tourek, David A. Kristal, Winthrop & Weinstine, St. Paul, Minn., for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on defendants Barry Lang, Stuart Lichter and Gerald Wendel's ("individual defendants") motion for summary judgment and on the plaintiff Resolution Trust Corporation's ("RTC") motion to dismiss the counterclaim of defendants Wayne Coliseum Limited Partnership ("Wayne Coliseum") and Rochelle Realty Corporation ("Rochelle Realty") (together "the defendants") for lack of subject matter jurisdiction. Based on the file, record and proceedings herein, the individual defendants' motion for summary judgment is denied and the RTC's motion to dismiss is granted.

1. In February 1989, the Federal Deposit Insurance Corporation ("FDIC") became managing agent for the conservator of Midwest Federal. In August 1989, the RTC became conservator for Midwest Savings Association ("Midwest Savings"), the successor to Midwest Federal. In October 1990, the RTC became receiver for Midwest Savings for purposes of liquidation.

## BACKGROUND

In December 1985, Wayne Coliseum borrowed $6,200,000 from the City of Fort Wayne, Indiana ("Fort Wayne"). Wayne Coliseum borrowed the money to finance the construction and rehabilitation of manufacturing and warehousing facilities located in Allen County, Indiana. Fort Wayne issued industrial revenue bonds to raise the money it lent Wayne Coliseum.

In November 1987, the First Bank of Minneapolis ("First Bank") and Midwest Federal Savings and Loan of Minneapolis ("Midwest Federal") issued letters of credit to provide liquidity support for the bondholders. Specifically, First Bank issued a letter of credit in favor of the bondholders and Midwest Federal issued a letter of credit in favor of First Bank in order to provide First Bank with security in the event of a draw under First Bank's letter of credit.

The bonds were subject to mandatory redemption on November 1, 1990. After that date, the trustee of the bonds made two draws on the First Bank letter of credit in the approximate amount of $6,200,000. First Bank then made two draws against the Midwest Federal letter of credit. The RTC, as receiver for Midwest Savings Association,[1] thereafter demanded full payment from Wayne Coliseum for both draws against the Midwest Federal letter of credit.[2]

### Individual Defendants' Liability

The RTC filed suit against Wayne Coliseum on March 29, 1991, after Wayne Coliseum did not comply with its demand for payment.[3] The RTC alleges that both Wayne Coliseum and the individual defendants are liable for the obligations of the partnership because Wayne Coliseum held itself out to be a general partnership. Originally, Wayne Coliseum was organized

2. The RTC also alleges that the defendants owe it $2,566,499.37 plus interest pursuant to the terms of a separate promissory note that Wayne Coliseum executed because Wayne Coliseum is in default under the terms of the note and related agreements.

3. The RTC amended it complaint on May 13, 1991, to add claims against the individual defendants.

as a limited partnership under the laws of the State of Indiana.[4] Wayne Coliseum had one general partner, Rochelle Realty, and the individual defendants were limited partners of Wayne Coliseum. The individual defendants were also the officers of Rochelle Realty.

On October 30, 1989, Indiana administratively dissolved Rochelle Realty. The RTC alleges that the dissolution of Rochelle Realty resulted in the dissolution of the Wayne Coliseum Limited Partnership. The RTC contends that since the dissolution of the limited partnership, Wayne Coliseum has held itself out as a general partnership. The RTC thus contends that both Wayne Coliseum and the individual defendants are liable for Wayne Coliseum's obligations.

The individual defendants contend that even though Indiana dissolved the general partner, Wayne Coliseum remained a limited partnership and that they remained limited partners of that partnership. In addition, the individual defendants contend that even if Wayne Coliseum held itself out as being a general partnership to the public, that fact is irrelevant for purposes of determining their personal liability because they are not liable as general partners to the RTC unless they led the RTC to believe that they were general partners. The individual defendants allege that there is no evidence that they led the RTC to believe that Wayne Coliseum became a general partnership or that they were general partners of Wayne Coliseum. The individual defendants thus move for summary judgment on the issue of their liability.

*Defendants' Counterclaim*

The defendants filed a counterclaim against the RTC alleging breach of contract and breach of a covenant of good faith and fair dealing. The RTC contends that the court lacks subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because the defendants have not exhausted their administrative remedies. Generally, parties with a claim against the RTC must first exhaust their administrative remedies before filing that claim in court. *See* Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d)(13)(D).

Defendants contend that their counterclaim is properly before the court and that they need not exhaust their administrative remedies because the RTC failed to initiate FIRREA's administrative claims procedures by failing to timely publish a notice that defendants should present their claims to the RTC. *See* 12 U.S.C. §§ 1821(d)(3)(B) and 1821(d)(3)(C).

In the alternative, defendants allege that they have exhausted their administrative remedies. Defendants contend that correspondence it had with the RTC in November and December of 1990, demonstrates that defendants notified the RTC of their claims and that the RTC disallowed those claims. On November 30, 1990, counsel for defendants wrote a letter to the RTC setting forth defendants' positions with respect to the RTC's handling of the redemption of the bonds and the draws on the Midwest Federal letter of credit. On December 10, 1990, the RTC responded that defendant's failure to make the payments that the RTC requested constituted a default under the agreement between the parties and that the bond redemption or the draws on the letter of credit did not stem from the negligence or any inattention on the part of RTC. Defendants thus contend that they exhausted their administrative remedies and that the court has jurisdiction over their counterclaim.

The RTC contends that it complied with the notice provisions. The RTC also contends that even if the court were to determine that it did not comply with the notice requirement, its failure to comply does not constitute a waiver of the requirement that defendants must exhaust their administrative remedies. In addition, the RTC asserts that the correspondence between the parties in November and December of 1990, does not constitute an exhaustion of

---

**4.** Wayne Coliseum filed its Certificate of Limited Partnership in Allen County, Indiana on December 10, 1985. Wayne Coliseum formed that limited partnership under the Indiana Uniform Limited Partnership Act ("IULPA"). *See* Ind. Code § 23–4–2–2.

administrative remedies. The RTC thus moves to dismiss defendants' counterclaim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## DISCUSSION

*Individual Defendants' Motion for Summary Judgment on Their Liability*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judg-

ment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. With that standard at hand, the court will consider the individual defendants' motion for summary judgment on their liability for Wayne Coliseum's obligations.

■ In Indiana, whether a limited partner is liable for the obligations of the partnership is governed by Section 23–4–2–7 of IULPA. Section 23–4–2–7 provides that:

> Sec. 7. A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business.

Ind.Code § 23–4–2–7. The individual defendants contend that under § 23–4–2–7, they are not liable as general partners unless they led the RTC to believe that they were general partners. *See e.g. Mount Vernon Sav. and Loan v. Partridge Assoc.,* 679 F.Supp. 522, 527 (D.Md.1987); *Frigidaire Sales Corp. v. Union Properties, Inc.,* 88 Wash.2d 400, 562 P.2d 244, 247 (1977) (en banc). The individual defendants contend that the RTC had actual knowledge that they were only limited partners of Wayne Coliseum and that there is no evidence that would lead the RTC to believe otherwise. The individual defendants also maintain that serving as officers of Rochelle Realty did not constitute taking part in the control of Wayne Coliseum under § 23–4–2–7. *Western Camps. Inc. v. Riverway Ranch Enter.,* 70 Cal.App.3d 714, 138 Cal.Rptr. 918, 927–28 (1977); *Frigidaire Sales,* 562 P.2d at 246–47. The individual defendants thus contend that the court should grant its motion for summary judgment.

The RTC claims that summary judgment is inappropriate because genuine issues as to material facts are in dispute. The RTC alleges that after Indiana's administrative dissolution of Rochelle Realty, Wayne Coliseum represented itself as a general partnership to the public. In support of that allegation, the RTC points out that Wayne Coliseum represented itself as a general

partnership in two complaints filed in the Superior Court of Allen County, Indiana. In those complaints, which were filed on February 1, 1991, Wayne Coliseum stated:

Plaintiff, Wayne Coliseum Limited Partnership, an Indiana general partnership ... states as follows:

1. Plaintiff is an Indiana general partnership ...

Bertrand Aff. at Exhibits 2 and 3. RTC thus contends that the representations that Wayne Coliseum made in those complaints raise genuine issues as to material facts regarding whether Wayne Coliseum represented itself as a general partnership to the public and whether the individual defendants took part in the control of that partnership. The RTC thus contends that granting the individual defendants' motion for summary judgment would be inappropriate.

The court concurs with the RTC and finds that a material fact dispute regarding the status of the individual defendants exists. The court is unable to determine as a matter of law from the facts before it that the individual defendants did not take sufficient control of the partnership so that the RTC could not have been led to believe that they were general partners of Wayne Coliseum for purposes of Ind.Code § 23–4–2–7. *See e.g. Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54. The court thus denies the individual defendants' motion for summary judgment.

*RTC's Motion to Dismiss Defendants' Counterclaim*

■ The defendants filed a counterclaim against the RTC alleging breach of contract and breach of a covenant of good faith and fair dealing. The RTC contends that the court lacks subject matter jurisdic-

tion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because the defendants have not exhausted their administrative remedies. Rule 12(b)(1) "[j]urisdictional issues, whether they involve questions of law or of fact, are for the courts to decide." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir.1990).

Generally, parties with a claim against the RTC must first exhaust their administrative remedies before filing that claim in court. 12 U.S.C. § 1821(d)(13)(D) provides:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

The exhaustion of administrative remedies requirement applies to counterclaims.[5] *See Resolution Trust Corporation v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir.1991); *Resolution Trust Corp. v. Dubois*, 771 F.Supp. 154, 158 (M.D.La.1991).

Defendants contend that in order for the RTC to invoke the exhaustion requirement, the RTC must first initiate the administrative claims process by promptly publishing a notice to Wayne Coliseum to present its claims to the RTC pursuant to 12 U.S.C. §§ 1821(d)(3)(B) or 1821(d)(3)(C). 12 U.S.C. § 1821(d)(3)(B) provides, in pertinent part, that:

---

**5.** Defendants' counterclaim falls within the confines of 12 U.S.C. § 1821(d)(13)(D). Defendants seek damages and specific performance in their breach of contract claim. That claim constitutes "a claim or action for payment from the assets of any depository institution for which the Corporation has been appointed receiver" and also constitutes an "action seeking a determination of rights with respect to the assets of any depository institution for which the Corporation has been appointed receiver." 12 U.S.C. § 1821(d)(13)(D)(i). Defendants breach of con-

tract claim is also a "claim relating to any act or omission of ... the Corporation as receiver." *Id.* § 1821(d)(13)(D)(ii). Defendants also seek damages in their breach of covenant claim. That claim also constitutes "a claim or action for payment from the assets of any depository institution for which the Corporation has been appointed receiver...." In addition, the breach of covenant claim falls under the purview of § 1821(d)(13)(D)(ii) because that defendants allege an omission by "the Corporation as receiver."

The receiver, ... shall

(i) promptly publish a notice to the depositor institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice; and

(ii) republish such notice approximately one month and two months, respectively, after the publication under clause (i).

12 U.S.C. § 1821(d)(3)(B)(i and ii). 12 U.S.C. § 1821(d)(3)(C) provides that:

The receiver shall mail a notice similar to the notice published under subparagraph (B)(i) at the time of such publication to any creditor shown on the institution's books—

(i) at the creditor's last address appearing in such books; or

(ii) upon discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address.

12 U.S.C. § 1821(d)(3)(C)(i and ii). Defendants contend that the RTC did not comply with either of those provisions and that they need not exhaust their administrative remedies.[6]

Even assuming the verity of defendants' allegation that they did not receive proper notice from the RTC, the court rejects defendants' waiver argument. There is no statutory provision providing the court with jurisdiction over claims filed after the RTC is appointed receiver but before administrative exhaustion. In addition, the court may not ignore the statutory administrative exhaustion requirement. *See Federal Deposit Insurance Corp. v. Shain,*

*Schaffer & Rafanello,* 944 F.2d 129, 136 (3rd Cir.1991). Thus, as it is undisputed that defendants' did not file their claim with the RTC, the court concludes that it lacks subject matter jurisdiction over defendants' counterclaim because the defendants have failed to satisfy their administrative remedies. *See Meliezer v. Resolution Trust Co.,* 952 F.2d 879, 883 (5th Cir.1992) (dismissing a claim without prejudice because of a failure to exhaust administrative remedies, even though the RTC did not comply with the notice provisions); *Marketplace/Ken Caryl Partners v. Victorio Inv. Co.,* 778 F.Supp. 29, 30–31 (D.Colo.1991) (same).

■ In the alternative, defendants argue that the court should deny the RTC's motion to dismiss because the failed negotiations between the parties constitute an exhaustion of administrative remedies. Defendants contend that the correspondence between the parties in November and December of 1990 demonstrates that the RTC knew of Wayne Coliseum's claims and that the RTC rejected those claims. The defendants thus contend that the RTC cannot now claim that the defendants must formally file a claim after it already has reviewed and rejected those claims.

Defendants contend that the Third Circuit Court of Appeals opinion in *Praxis Properties, Inc. v. Colonial Sav. Bank,* 947 F.2d 49 (3d Cir.1991), supports their contention. The Third Circuit found that Praxis Properties satisfied Congress's intent that claimants first present their claims for administrative review, even though Praxis Properties never formally filed its claim with the RTC, because Praxis

---

6. The RTC became receiver for Midwest Savings Association for purposes for liquidation on October 5, 1990. In conjunction therewith, the RTC published notice to persons or entities with claims against the insolvent institution or the RTC. Wayne Coliseum alleges that it did not receive notice until November 12, 1991, four days after the RTC filed its motion to dismiss defendants' counterclaim. Defendants contend that at the latest, the RTC was on notice of their claims on November 30, 1990, the date defendants submitted a letter to the RTC detailing their position with respect to the redemption of the bonds and subsequent draws on the Midwest Federal letter of credit and that the RTC

did not publish notice within thirty days as § 1821(d)(3)(C)(ii) requires.

The RTC contends that it complied with the notice requirements by putting defendants on notice as to the need to exhaust their administrative remedies. The RTC contends that its reply to defendants' counterclaim, filed on June 17, 1991, in which the RTC pled as an affirmative defense that defendants had failed to exhaust their "administrative remedies as required by statute, 12 U.S.C. § 1821," constituted sufficient notice under the law and that defendants have failed to pursue their administrative remedy.

Properties had presented its claim to the RTC and, after extensive discussions over many months, the RTC rejected that claim. *Id.* at 64.

The Third Circuit's decision in *Praxis Properties* is distinguishable from the case before the court. The Third Circuit limited its ruling to situations where the claim arose soon after FIRREA became law and where the RTC and the claimant failed to settle the claim after extensive negotiations. The Third Circuit stated:

Because RTC did disallow Praxis's claim after months of negotiations, and because this case arose in the nascent stages of FIRREA, at which time RTC lacked a fully developed, standardized claims process, we conclude that 12 USCA § 1821(d)(13)(D) was not a bar to federal jurisdiction over this case. We do not mean to imply, however, that under today's regime, a mere breakdown of negotiations between RTC and a claimant would entitle the claimant to proceed in court.

*Id.* The court finds that in the present case, the one exchange of letters between the defendants and the RTC in November and December of 1990 constitutes nothing more than "a mere breakdown of negotiations." In addition, the RTC's administrative review process is fully operational. The court thus concludes that defendants have not exhausted their administrative remedies and that their counterclaim is dismissed without prejudice.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants Barry Lang, Stuart Lichter and Gerald Wendel's motion for summary judgment on their contention that they are not liable for the obligations of the partnership is denied;

2. Resolution Trust Corporation's motion to dismiss the defendants' counterclaim for lack of subject matter jurisdiction is granted and the defendants' counterclaim is dismissed without prejudice.