**FEDERAL DEPOSIT INSURANCE CORPORATION, receiver for Guaranty Federal Bank, F.S.B., formerly known as Guaranty Federal Savings and Loan,** Plaintiff,

v.

**UPDIKE BROTHERS, INC.,**
et al., Defendants.

No. 92–CV–0115–J.

United States District Court,
D. Wyoming.

Feb. 8, 1993.

Douglas G. Madison, Dray, Madison & Thompson, Cheyenne, WY, for Updike Bros., Inc.

Fred W. Dilts, III, Douglas, WY, for Leon Towell.

Blair J. Trautwein, Hathaway, Speight, Kunz, Trautwein & Barrett, Cheyenne, WY, David L. Osborn, Wood, Herzog, Osborn & Bloom, P.C., Fort Collins, CO, for Lonetree Village Mobile Home Park, Betzing, Paterson and Paterson Inv. Co. Numbers 1 & 2, a general partnership, Robert B. Paterson and Arthur F. Paterson.

James A. Hardee, Douglas, WY, for CNI Inc.

Mary L. Scheible, Asst. Atty. Gen., Wyo. Atty. Gen., Cheyenne, WY, for intervenor Wyo. Atty. Gen.

## ORDER DISMISSING THE DEFENDANTS' AFFIRMATIVE DEFENSES, AND DENYING DEFENDANTS' MOTIONS

ALAN B. JOHNSON, Chief Judge.

This matter comes before the Court on the following motions: plaintiff FDIC's motion for summary judgment against all defendants; a cross motion by defendant Updike Brothers, Inc., for partial summary judgment against the FDIC; and motions by defendants, Updike Brothers, Inc., Leon Towell, and Lone Tree Village, et al., (the joint venturers) to amend their answers by interlineation and for leave to file counterclaims; and finally, a motion by defendants Lonetree Village, et al., to dismiss or in the alternative to stay the pending action. A hearing was held on December 31, 1992.

### I. GENERAL BACKGROUND

The plaintiff Federal Deposit Insurance Corporation ("FDIC"), as receiver for Guaranty Federal Bank ("Guaranty"), filed this lawsuit seeking to recover a deficiency on a promissory note and mortgage executed by Updike Brothers, Inc. ("Updike").

In 1976 Updike secured a loan from Guaranty in order to develop a mobile home park in Douglas, Wyoming. As security for a note evidencing the loan, Updike executed a mortgage which encumbered the development.

Bradley T. Cave, Patrick R. Day, Susan E. Laser–Bair, Holland & Hart, Cheyenne, WY, for F.D.I.C.

Updike sold the property to Lonetree Village Mobile Home Park (a joint venture comprised of C.N.I., Inc., and Betzing, Paterson and Paterson Investment Companies 1 and 2, general partnerships) (hereinafter, sometimes collectively referred to as "Lonetree"). Lonetree assumed the payments on the note. The assumption agreement was modified twice resulting in a reduction of the monthly payments and the joint venturers' joint and several liability for payments.

Lonetree sold the property to Leon Towell, who executed an assumption agreement without release. Lonetree remained liable for payments on the promissory note. Towell defaulted on the payments and the FDIC foreclosed and sold the property. Now the FDIC sues for the deficiency.

Defendant C.N.I., Inc. generally denies the FDIC's allegations and affirmatively alleges estoppel and laches. Additionally, C.N.I., Inc., cross-claims against Leon Towell and alleges that Towell is solely responsible for the obligations on the promissory note and mortgage.

Defendant Leon Towell generally denies the FDIC's allegations and affirmatively alleges breach of good faith and fair dealing, estoppel and defective foreclosure. Additionally, Towell moves to amend his answer to allege that the FDIC breached an implied covenant of good faith and fair dealing with respect to the defendant in mistakenly tendering its default letter and, further, that the FDIC violated its alleged duty of diligence, good faith and fair dealing in that the foreclosure was not conducted in a timely manner.

Defendant Updike generally denies the FDIC's allegations and affirmatively alleges limited liability as a surety, estoppel and that the plaintiff made drastic changes to the defendant's liability without its consent. Updike also has filed a cross-claim against the co-defendants seeking indemnification. Additionally, Updike moves to amend its answer to allege two additional affirmative defenses and to counterclaim based on substantially the same grounds alleged by Towell, e.g., breach of covenant of good faith and fair

dealing and violation of duty of diligence, good faith and fair dealing.

Furthermore, defendant Updike asserts that Wyo.Stat. § 34–4–103(a)(iv), which requires that the written notice of the intent to foreclose the mortgage be mailed only to the record owner and the person in possession, is unconstitutional in that it violates the due process clauses of the 5th and 14th Amendments of the United States Constitution and Article 1 § 6 of the Wyoming Constitution. Accordingly, this Court has allowed the State of Wyoming to intervene and become a party in this action.

The defendants Lonetree Village Mobile Home Park; Betzing, Paterson and Paterson Investment Companies 1 and 2; Robert B. Paterson and Arthur F. Paterson generally deny the plaintiff's allegations and affirmatively allege lack of good faith at foreclosure sale, that the foreclosure sale was not "commercially reasonable" under the U.C.C., ambiguity, failure to provide proper notice of foreclosure, failure to mitigate damages and that individual partners are not jointly and severally liable for debts of a partnership. Additionally, they join in Updike's motion to amend their answer and to file a counterclaim.

The FDIC has filed a motion for summary judgment against all of the defendants. Among other things, the FDIC asserts that this Court lacks subject matter jurisdiction over the defendants' counterclaims and affirmative defenses under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). The FDIC directs our attention to three recent orders of this Court. In those orders we found that certain claims against the FDIC[1] are expressly exempted from the Court's subject matter jurisdiction until the administrative claims procedure prescribed in FIRREA is completed. *See relevant orders in Resolution Trust v. Love,* 92–CV–1018–J, 1992 WL 455432 (D.Wyo. November 25, 1992); *Nepstad v. FDIC,* 92–CV–200–J, 1992 WL 455434 (D.Wyo. November 17, 1992); *FDIC v. Coulter,* 91–CV–1047–J, 1992 WL 455433 (D.Wyo. September 22, 1992).

1. Or the Resolution Trust Corporation in its capacity as receiver. *See* 12 U.S.C. § 1441a.

The defendants assert that FIRREA cannot bar this Court's consideration of their affirmative defenses and counterclaims because FIRREA does not apply retroactively. Alternatively, the defendants contend that their various affirmative defenses and counterclaims are not "claims" subject to the exhaustion requirement of FIRREA. In the event that FIRREA is found to be applicable, the defendants contend that the FDIC has waived the exhaustion requirement by failing to provide them with actual notice of the need to present claims pursuant to FIRREA's claims procedure. Should the Court find that it has no jurisdiction over the defendants' claims and affirmative defenses, they move for a dismissal or, alternatively, for a stay of the FDIC's deficiency action pending exhaustion of administrative review.

Additionally, Updike has filed a cross-motion for partial summary judgment against the FDIC.

The Court will first address FIRREA's applicability to this case, because the arguments pertaining thereto address issues relating to the existence of subject matter jurisdiction. We will address the motions for summary judgment in a separate order.

## II. FIRREA

In addressing the defendants' various contentions we turn to the language of the Financial Institutions Reform, Recovery, and Enforcement Act itself. The Court is guided by the law of this circuit pertaining to statutory construction. We have a duty to construe FIRREA consistent with the intent of Congress as expressed in the plain meaning of its language. When the terms of the statute are unambiguous, the court's analysis will generally go no further. *Aulston v. U.S.*, 915 F.2d 584, 589 (10th Cir.1990). Specific words within the statute are not to be read in isolation of the remainder of the entire statutory scheme; rather, we look to the provisions of the whole law, and to its object and policy. *Id.* Additionally, the

Court may consult legislative history as a secondary source of a statute's meaning. *State of Colo. v. Idarado Min. Co.*, 916 F.2d 1486, 1494 (10th Cir.1990).

Congress enacted FIRREA in 1989 as a response to massive losses which were occurring in the nation's thrift industry and its deposit insurance fund. H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 1, 302, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 98. Congress recognized that consumer confidence in the nation's savings and loan system was diminishing as a result of the crisis and that immediate resolution of the situation was imperative. *Id.* at 305, *reprinted at* 101. In order to achieve this vital objective, Congress granted the receivers of failed institutions broad powers to enable them to address all problems posed by a failing financial institution. *Id.* at 330–31, *reprinted at* 126–27; *see also* 12 U.S.C. § 1821(d) (specifying the powers of the corporation as conservator or receiver).

Congress projected that the full thirty year cost of cleaning up the thrift industry would be $335 billion and put that cost in perspective by noting that the entire Marshall Plan to rebuild Europe after World War II cost only $13.3 billion. H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 1, 514, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 308. Congress also noted that several factors could serve to increase this amount, including higher than expected costs for case resolutions. *Id.* at 515, *reprinted at* 309. Therefore, Congress enacted a scheme whereby the FDIC was empowered to administer a streamlined claims procedure designed to dispose of the bulk of claims against failed financial institutions expeditiously and fairly. *Id.* at 419, *reprinted at* 215. Congress sought to tailor the FIRREA claims procedure to be consistent with the reasoning and concerns recently expressed by the U.S. Supreme Court with the goal of establishing a constitutional administrative exhaustion requirement.[2] *Id.*

---

2. Shortly before the enactment of FIRREA, the Court held that the Federal Savings and Loan Insurance Corporation (FSLIC) did not have authority to adjudicate claims filed against failed institutions and that a plaintiff was entitled to *de*

*novo* review by a district court. *Coit Independence Joint Venture v. FSLIC*, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989). Justice O'Connor noted in *Coit* that in the future a plaintiff may be required to exhaust an adminis-

Title 12 U.S.C. § 1821(d)(13)(D) provides as follows:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

Congress grants the FDIC primary authority to determine claims and provides for a judicial determination of claims only after the FDIC has either disallowed the claim or failed to act upon the claim. *See* 12 U.S.C. §§ 1821(d)(3) and 1821(d)(6). Clearly, § 1821(d)(13)(D) precludes suit in a federal court on a claim that is not first presented to the corporation and constitutes a mandatory exhaustion requirement. *See Rosa v. Resolution Trust Corp.,* 938 F.2d 383 (3rd Cir. 1991); *Local 2 v. FDIC,* 962 F.2d 63, 65 (D.C.Cir.1992). Therefore, FIRREA mandates administrative exhaustion and failure to first present a claim to the corporation precludes suit on the claim; this critical jurisdictional requirement has been actively enforced by our sister circuits. *Rosa,* 938 F.2d at 393–96; *Local 2,* 962 F.2d at 65; *Resolution Trust Corp. v. Elman,* 949 F.2d 624, 626 (2d Cir.1991); *Marquis v. F.D.I.C.,* 965 F.2d 1148, 1152 (1st Cir.1992); *Meliezer v. Resolution Trust Co.,* 952 F.2d 879, 881–82 (5th Cir.1992).

■ Nevertheless, the defendants assert that their various affirmative defenses and counterclaims are not "claims" subject to the exhaustion requirement of FIRREA. The defendants point to the use of the word "creditors" in the section of FIRREA requiring published notice as supporting the proposition that FIRREA's exhaustion requirement is only applicable to creditors' claims, e.g., to trade creditors or others to whom the institution is indebted. *See* § 1821(d)(3)(B). We disagree with this hypertechnical reliance

on the use of the word "creditor." Specific words within FIRREA are not to be read in isolation of the remainder of the entire statutory scheme; instead, we must look to FIRREA as a whole, and to its object and policy in order to determine what kind of claims are subject to exhaustion. *Aulston v. U.S.,* 915 F.2d 584, 589 (10th Cir.1990).

The terms "creditor", "claim", and "claimant" are not specifically defined in any section of FIRREA. *Local 2,* 962 F.2d at 65. However, the language of § 1821(d)(13)(D) is quite broad and precludes jurisdiction over "any claim or action" seeking a determination with respect to the assets of any depository institution. Section (d)(13)(D) also precludes jurisdiction over "any claims relating to any act or omission of" the financial institution or of the receiver.

Universally, the federal courts have broadly applied the exhaustion requirement to an extensive variety of claims. The Fifth Circuit has recognized that a suit against the RTC for its alleged negligence in allowing mortgagors to assume loan and hazard insurance is subject to FIRREA's exhaustion requirement. *Meliezer,* 952 F.2d at 883. Where the RTC sued the former officers of a failed institution for failure to exercise due care in the performance of their duties, a counterclaim for money damages was subject to FIRREA's exhaustion requirement. *Resolution Trust Corp. v. Ryan,* 801 F.Supp. 1545, 1557 (S.D.Miss.1992). Where the FDIC sued borrowers to foreclose for default on a mortgage and to recover on promissory notes, the borrowers' affirmative defenses and counterclaims including fraud, unfair and deceptive practices, breach of implied covenant of good faith, negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and punitive damages were held to be claims subject to exhaustion. *FDIC v. Rusconi,* 796 F.Supp. 581, 589 (D.Me.1992). Where a tenant sued the RTC as receiver of a failed institution for breaches of a lease, the court held that the claims were subject to FIRREA's exhaustion requirement. *Chisim v. Resolution Trust Corp.,* 783 F.Supp. 361, 362 (N.D.Ill.1991).

*trative claims procedure if it was governed by a*        clear set of guidelines.

Where a plaintiff asserted negligence and consumer protection claims against bank and the FDIC was subsequently appointed receiver, the court held that the claims were subject to FIRREA's exhaustion requirement. *United Bank of Waco v. First Republic Bank of Waco*, 758 F.Supp. 1166, 1167–68 (W.D.Tex.1991).

In light of the unambiguous language mandating the exhaustion requirement and in light of Congress' express fear that the costs of litigation would exacerbate an already catastrophic situation, it is patently clear that the jurisdictional bar of section 1821(d)(13)(D) reaches all claims seeking payment from the assets of the affected institution, all claims seeking satisfaction from those assets, and all claims relating to any act or omission of either of the institution or the receiver regardless of whether the action is framed as a claim, counterclaim, or affirmative defense. 12 U.S.C. § 1821(d)(13)(D); 12 U.S.C. § 1821(d)(6); *See also Federal Sav. and Loan Ins. Corp. v. Shelton*, 789 F.Supp. 1367, 1371 (M.D.La.1992). Therefore, we find that the various counterclaims and affirmative defenses asserted by the defendants in this case are "claims" subject to the exhaustion requirement mandated by FIRREA because they seek a determination of rights with respect to the assets of Guaranty and they relate to acts of both the institution and of the receiver.

■ Nonetheless, the defendants contend that the FDIC has waived the exhaustion requirement by failing to provide them with actual notice of the need to present claims pursuant to FIRREA's claims procedure. In the section of FIRREA granting the FDIC authority to determine claims, Congress specifically prescribed the following notice requirements.

  (B) Notice requirements

    The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall—

      (i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90

days after the publication of such notice; and

      (ii) republish such notice approximately 1 month and 2 months, respectively, after the publication under clause (i).

(C) Mailing required

    The receiver shall mail a notice similar to the notice published under subparagraph (B)(i) at the time of such publication to any creditor shown on the institution's books—

      (i) at the creditor's last address appearing in such books; or

      (ii) upon discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address.

Title 12 U.S.C. § 1821(d)(3)(B)–(C).

The defendants claim that there is no evidence in the record that the FDIC either published notice or mailed notice as the statute requires. The FDIC, at the hearing held on this motion, indicated that it had published notice but did not claim to have mailed notice to the defendants. Additionally, the FDIC asserted that the use of the word "creditors" in § 1821(d)(3) limits the application of the notice requirements strictly to creditors, e.g., to trade creditors or other entities to whom the institution is indebted. We disagree; as previously stated, specific words within FIRREA are not to be read in isolation. *Aulston*, 915 F.2d at 589. This Court broadly construes the word "creditors", as used in § 1821(d)(3), to denote claimants subject to the statute's exhaustion requirement. Other federal courts have applied the notice requirement in a similar manner. *Meliezer*, 952 F.2d 879, 880 (addressing the notice requirement in the context of a claim asserting that the RTC was negligent); *Glenborough New Mexico Assoc. v. Resolution Trust*, 802 F.Supp. 387 (D.N.M. 1992) (addressing the notice requirement in the context of claims against the RTC asserting breach of good faith, fair dealing, tort, fraudulent conveyance, misrepresentations, and rescission).

Proper notice activates FIRREA's administrative claims process. *Meliezer*, 952 F.2d

at 880. After being notified to present their claims, claimants have 90 days in which to present them. 12 U.S.C. § 1821(d)(3)(B)(i). This notice is very important in that the only way that a claimant can receive a judicial determination of his rights with regard to claims against the assets of the institution is to first present those claims to the receiver within the prescribed 90–days.[3]

■ However, the receiver does not waive FIRREA's administrative exhaustion requirement by failing to provide notice in accordance with § 1821(d)(3)(B)–(C). *Meliezer,* 952 F.2d at 882–83; *Glenborough,* 802 F.Supp. at 393; *Resolution Trust v. Wayne Coliseum Ltd.,* 793 F.Supp. 900 (D.Minn. 1992); *Marketplace/Ken Caryl Partners v. Victorio Inv.,* 778 F.Supp. 29, 30–31 (D.Colo. 1991). It is a well known principle that federal courts are courts of limited jurisdiction. *Penteco Corp. v. Union Gas System,* 929 F.2d 1519, 1521 (10th Cir.1991). Federal courts have no power to excuse a Congressionally mandated condition precedent to federal jurisdiction regardless of the reason the condition was not met. *Glenborough,* 802 F.Supp. at 393; *Wayne Coliseum,* 793 F.Supp. at 905. Furthermore, FIRREA contains no statutory provision providing the court with jurisdiction prior to exhaustion of the claims procedure.

We are still faced with the defendants' charge that the FDIC has failed to comply with FIRREA's notice requirements; a charge which implicates procedural due process considerations. The defendants' argument seems to be that because the FDIC failed to give them notice of the required claims procedure and because this court refuses to waive the exhaustion requirement, the defendants are precluded from ever having an opportunity to be heard with regard to their various counterclaims and affirmative defenses. However, this argument is flawed in that it misconstrues FIRREA's application.

■ Pursuant to § 1821(d)(3)(B)–(C) the receiver is required to give notice to all claimants to present their claims within 90 days of receiving notice. This notice activates the streamlined FIRREA claims process. *See Meliezer,* 952 F.2d at 880. Where a claimant has been properly notified of the claims procedure and yet fails to initiate an administrative claim within the 90 day filing period the claimant necessarily forfeits any right to pursue the claim in any court. 12 U.S.C. § 1821(d)(5)(C)(i); *See also Marquis,* 965 F.2d at 1152. Conversely, it stands to reason that if the receiver fails to give proper notice then the FIRREA claims process will not be initiated. Therefore, absent proper notice the claimant remains free to present claims to the receiver because the time period prescribed by FIRREA for presenting claims only begins to run after the notice requirements have been properly complied with. In this way claimants "are not deprived in any way of access to an Article III court, but at most suffer a relatively slight delay to permit a receiver to determine whether to allow their claims." *Rosa,* 938 F.2d at 396. FIRREA's claims procedure does not deny claimants an opportunity to be heard at a meaningful time and in a meaningful manner in that claims submitted to the receiver are subject to *de novo* review by courts. *Id.* at 397; 12 U.S.C. § 1821(d)(6).

■ Defendants further allege that their affirmative defenses relate to the FDIC's statutory duty to maximize its net returns and minimize any losses realized in the resolution of cases. The defendants contend that:

> In effect, Defendants via their amended affirmative defenses and counterclaims contend that the FDIC did not comply with its statutory [sic] mandated duties and obligations. Thus, even if FIRREA is applicable, these defenses are nevertheless properly before this Court.

Memorandum in Support of Updike Brothers' Resistance to FDIC's Motion for Summary Judgment at 12. This is at its best a specious contention and at its worst it is incoherent; furthermore, it is not supported by any authority. Additionally, it is clear from the statute and the legislative history that the FDIC's duty to maximize its net returns and minimize its losses is not a duty

---

**3.** *See generally* the discussion with regard to administrative exhaustion *supra.*

owed to claimants against the assets of a failed institution but instead it is a duty owed to the American public at large. *See especially* H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess., 1, 514–15, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 308–309 (Congress was particularly concerned about the strain that the savings and loan bailout would have on the American taxpayers who are to shoulder approximately $183 billion dollars worth of the burden). The affirmative defenses and counterclaims asserted by the defendants are not properly before this Court.

■ The defendants move for either a dismissal or a stay of this action pending exhaustion of FIRREA's prescribed claim procedure with regard to their affirmative defenses and counterclaims. However, FIRREA contains no statutory provision providing for a stay in such a situation.[4] In addition, the defendants have cited little authority which would authorize granting a stay. The defendants have cited only one case where the court granted a stay pending the RTC's determination of the borrower's claims. *Topolnycky v. Ukrainian Sav. & Loan Ass'n,* 799 F.Supp. 36 (E.D.Pa.1992). However, the *Topolnycky* court did not cite any authority under which it was authorized to grant a stay.[5] The Eastern District of Louisiana has held that a stay is inappropriate when no subject matter jurisdiction is present. *Resolution Trust Corporation v. Dours,* 1992 WL 176116 (E.D.La.1992) (unpublished decision granting the RTC's motion to dismiss borrowers' counterclaim for failure to exhaust FIRREA's claims procedure); *Yumukoglu v. Resolution Trust Corporation,* 1991 WL 68322 (E.D.La.1991) (unpublished decision granting RTC's motion to dismiss for failure to exhaust). The Northern District of Georgia came to a similar conclusion, finding that a dismissal is appropriate rather than a stay. *Resolution Trust Corporation v. Youngblood,* 807 F.Supp. 765 (N.D.Ga.1992) (unpublished decision granting the RTC's motion to dismiss defendants' counterclaims).

To grant a stay where Congress did not provide for one would seem contrary to Congress' intent to resolve claims expeditiously. Therefore, we decline to follow *Topolnycky* and find that dismissal of the affirmative defenses and counterclaims is warranted and that granting a stay is unwarranted. Fed. R.Civ.P. 12(h)(3) (whenever it appears that the court lacks jurisdiction it shall dismiss the action).

■ Finally, we address the defendants' contention that FIRREA cannot bar this Court's consideration of their affirmative defenses and counterclaims because FIRREA does not apply retroactively. In the present case FSLIC, predecessor to FDIC, commenced its receivership of Guaranty in 1986, before enactment of FIRREA. However, it is also important to note that the present action was initiated in 1992, after the enactment of FIRREA. The defendants cite *FDIC v. Cherry, Bekaert & Holland,* 742 F.Supp. 612 (M.D.Fla.1990) as holding that FIRREA does not apply retroactively. That is a broad overstatement of that court's holding. In fact, *Cherry* narrowly stated that § 1821(d)(14) of FIRREA (pertaining to limitations periods applicable to actions brought by the receiver[6]) was not intended to apply retroactively to *pending litigation. Cherry,* 742 F.Supp. at 616. The *Cherry* court did

---

4. However, FIRREA does recognize that courts may stay pre-receivership actions initiated by the failed institution where the federal insurer has been subsequently named a party to the action until the FIRREA claims process has been complied with. Five provisions of § 1821(d) contemplate situations where, after the corporation is substituted as a party to the litigation, the claimant may file an administrative claim with the receiver. 12 U.S.C. § 1821(d)(5)(F)(ii), § 1821(d)(6)(A), § 1821(d)(6)(B)(ii), § 1821(d)(7)(A), and § 1821(d)(8)(C)–(D); *Simms v. Biondo,* 785 F.Supp. 322, 324–25 (E.D.N.Y. 1992) (Congress manifested an intent to permit a claimant to continue an action on a claim insti-

tuted against an insolvent bank before appointment of the FDIC as receiver).

5. Additionally, the *Topolnycky* court ordered the RTC to accept and process the plaintiff's proof of claim. An action which may be contrary to FIRREA's mandate that "no court may take any action ... to restrain or affect the exercise of powers or functions of the Corporation as a conservator or receiver." 12 U.S.C. § 1821(j).

6. As opposed to actions brought by a claimant against the assets of the institution.

not rule on the question of whether FIRREA as a whole was intended to be applied retroactively to pending litigation. *Id.* Additionally, the *Cherry* case is distinguishable from the present case in that the *Cherry* case involved a situation where the FDIC was asserting a claim in its corporate capacity. It is also distinguishable in that the present case was not pending at the time of FIRREA's enactment. The *Cherry* decision is not binding on this Court and we decline to follow it in this instance.[7]

The Ninth Circuit Court of appeals also declined to follow *Cherry* in a well reasoned opinion holding that the statute of limitations' provisions of FIRREA can be applied retroactively. *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 486–87 (9th Cir.1991). That court relied on *Bradley v. School Bd. of the City of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2115, 40 L.Ed.2d 476 (1974), for the proposition that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* However, a recent U.S. Supreme Court case casts some doubt upon the legitimacy of the *Bradley* proposition; the *New Hampshire* court aptly characterized the apparent disparity in the following way:

> In *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), in a case involving the retroactivity of an administrative rule, the Supreme Court stated: "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* at 208, 109 S.Ct. at 471. The *Georgetown* opinion did not cite *Bradley.* In *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), the Supreme Court acknowledged that *Georgetown* and *Bradley* are "[i]n apparent tension ..." *Id.* [494 U.S. at 837] 110 S.Ct. at 1577. The Court concluded that it "need not in this case, however, reconcile the two lines of precedent represented by *Bradley, supra,* and *Georgetown, supra,* because under either view, where the congressional intent is clear, it governs." *Id.*

953 F.2d at 486.

Because we are applying the administrative exhaustion requirement of § 1821(d) to affirmative defenses and counterclaims which were initiated after the enactment of FIRREA, we are not altogether convinced that there is a legitimate retroactivity issue properly before us. However, we will address the issue of retroactivity because the exhaustion requirement effects claims which are in part predicated on the activities of FSLIC prior to FIRREA's enactment.

Our research has disclosed that in enacting FIRREA Congress was *responding* to a crisis in our nation's savings and loan industry. Congress recognized that in 1988 alone "the FSLIC acted on 223 problem thrifts including 179 assisted mergers and acquisitions, 26 liquidations, and 18 consolidations" which would ultimately cost the corporation at least $60–70 billion. H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 1, 304, *reprinted in* 1989 U.S.Code Cong. & Admin.News 89, 100. There were 364 insolvent thrifts still operating at the year-end of 1988. *Id.* Congress noted that one of the main purposes of the Act was to "establish organizations and procedures ... to resolve failed thrift cases and dispose of the assets of these institutions." *Id.* at 307, *reprinted at* 103.

In light of the statements in the legislative history indicating that FIRREA was a response to a crisis rooted in the past, and considering FIRREA and the policies behind it as a whole, it is clear that Congress intended the streamlined administrative claims process to be applicable to claims initiated after the enactment of FIRREA regardless of when the acts which gave rise to the claim occurred. We have found nothing in the statute or the legislative history which would suggest anything to the contrary.

---

7. It is also notable that at least one other court, referring to another FIRREA holding in the *Cherry* case, found that the "reasoning in *Cherry, Bekaert & Holland* [is] so unclear, that the case carries no weight in this action." *MCorp v. Clarke*, 755 F.Supp. 1402, 1409 n. 16 (N.D.Tex. 1991).

**1044**

Therefore, because it is apparent that this Court lacks subject matter jurisdiction over the defendants' various affirmative defenses and counterclaims;

IT IS ORDERED that the defendants' affirmative defenses should be and are DISMISSED for lack of jurisdiction; it is

FURTHER ORDERED that the defendants' motions to amend their complaints to allege further affirmative defenses and for leave to counterclaim against the FDIC should be and are DENIED; it is

FURTHER ORDERED that the defendants' motion for a stay should be and is DENIED.

The cross motions for summary judgment are currently under advisement.