**RESOLUTION TRUST CORPORATION In its Capacity as Receiver for Perpetual Savings Bank, F.S.B., Plaintiff/Counterdefendant**

v.

**Dennis A. LASKIN, et al., Defendants/Counterclaimants**

**Civ. No. 93–CV–224.**

United States District Court, D. Maryland.

Feb. 18, 1994.

William E. Donnelly, Washington, DC, for plaintiff.

David B. Bullington, Washington, DC, for defendants.

## OPINION

MESSITTE, District Judge.

### I.

In this case two individuals whose business borrowed money and who personally guaran-teed the loan seek to avoid liability as guar-antors because the wife of one of them, alleg-edly uninvolved in the business, was required to be a co-guarantor. The wife also seeks to disclaim responsibility for the guaranty, a result, they contend, required by the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 et seq.

These individuals, Defendants in the pres-ent law suit, raise the alleged ECOA viola-tion as their third affirmative defense and also propose it as a counterclaim. Plaintiff Resolution Trust Corporation (RTC) has moved to strike the defense and dismiss the counterclaim. The Court will grant Plain-tiff's Motions as to all Defendants.

### II. FACTUAL BACKGROUND

In February, 1988, Church Road, L.C.I. Limited Partnership, a Maryland limited partnership engaged in real estate develop-ment in Prince George's County, executed and delivered to Perpetual Savings Bank, F.S.B. a promissory note in the principal amount of $3.3 million dollars. On the same date, Defendants Dennis A. Laskin, and Don-ald I. and Sheila V. Colton, the latter hus-band and wife, executed an unconditional joint and several guaranty of repayment of the debt represented by the note.

After having been amended on three occa-sions, the note ultimately matured on Octo-ber 10, 1991, at which time the partnership defaulted upon its obligations.

In January, 1992, the Office of Thrift Su-pervision of the U.S. Department of the Treasury appointed RTC as receiver for Per-petual Bank, pursuant to Section 5(d)(2) of the Home Owners Loan Act, as amended, 12 U.S.C. § 1464(d)(2). RTC thus succeeded to Perpetual's rights in the subject note and, in conformity with its authority under the Fi-nancial Institutions Reform, Recovery, and Enforcement Act. of 1989 ("FIRREA"), Pub.L. No. 101–73. 103 Stat. 183, §§ 101–1404, commenced to act.

In January and February and March of 1992, pursuant to 12 U.S.C. § 1821(d)(3)(B), it published a notice to Perpetual's creditors requiring the filing of claims against Perpet-

ual to be submitted by April 18, 1992, the "bar date". Neither Defendants nor the partnership whose loan they guaranteed submitted a claim by the bar date, nor had any of them ever made a claim against Perpetual prior that time.

In October of 1992, RTC filed the present suit against Defendants based on their guaranty.[1] In their Answer, Defendants admit that the partnership executed the note and its amendments, that they individually executed the guaranty, that demand has been made upon them for repayment of the loan, and that they have not repaid it. While they appear to deny that the partnership ever received the loan proceeds and further plead that they are unable to admit or deny how much principal interest and other charges might be due, for present purposes the Court assumes that at least the fact of receipt of the loan proceeds by the partnership is not seriously contested and would be demonstrable in fairly straightforward fashion.

Defendants also plead a number of affirmative defenses, the third of which is the subject of the present motion, namely that Plaintiff's claims are barred by the Equal Credit Opportunity Act and/or are subject to recoupment of damages incurred by reason of Perpetual Bank's alleged violation of the Act.[2] Alternatively, they present the ECOA violation as a counterclaim in which they allege that, despite the individual creditworthiness of Laskin and Donald Colton, Perpetual wrongfully required Sheila Colton to execute an unlimited personal guaranty as a condition of extending the loan. Since Mrs. Colton purportedly had no ownership interest in the property or the partnership and no active involvement in the business, a violation of ECOA is said to have occurred. Whereas ECOA asserted as a defense culminates in a prayer by Defendants that Plaintiff's claim be dismissed, in their counterclaim they seek,

inter alia, compensatory and punitive damages as well as attorney's fees and costs.

## III. *THE ECOA CLAIM*

Before considering Plaintiff's arguments why Defendants' ECOA defense and counterclaim should be disallowed, it may be helpful to review the nature of the ECOA claim.

The Equal Credit Opportunity Act, 15 U.S.C., Section 1691 *et seq.* provides, in relevant part, that:

"a) (i)t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—

1) on the basis of ... marital status ..."

15 U.S.C. 1691(a)(1).

The Federal Reserve Board has adopted regulations that flesh out these terms. *See* 12 CFR Section 202 *et seq.* (Regulation B). These define, among other things, the term "applicant" as used in the statute to mean:

"any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit. For purposes of Section 202.7(d), the terms includes guarantors, sureties, endorsers and similar parties."

12 C.F.R. Section 202.2(e).

Section 202.7(d) addresses in particular the matter of requiring a spousal signature in connection with the extension of credit:

"d) *Signature of spouse or other person.*

1) *Rule for qualified applicant.* Except as provided in this paragraph, a creditor shall not require the signature of an applicant, spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's

---

**1.** Suit was initially filed in the United States District Court for the Eastern District of Virginia, but was eventually transferred to this Court.

**2.** Defendants' special defense constitutes their Second Defense. They also plead that Plaintiff has failed to state a claim (First Defense); has failed to mitigate damages (Fourth Defense); is not entitled to recovery of attorneys fees (Fifth

Defense); and is barred by the doctrines of waiver, estoppel, laches, release, discharge, failure of consideration, and such other defenses as may become known during discovery in a trial (Sixth Defense). Since Plaintiff has not moved to strike these defenses, their assertability *vel non* is not presently before the Court.

standards of creditworthiness for the amount and terms of the credit requested.

\* \* \* \* \* \*

5) *Additional parties.* If, under a creditor's standards of creditworthiness, the personal liability of an additional party is necessary to support the extension of credit requested, a creditor may request a cosignor, guarantor, or the like. The applicant spouse may serve as an additional party, but the creditor shall not require that the spouse be the additional party."

*Court's Attention*

By requiring Mrs. Colton to co-guaranty the loan under the circumstances previously described, Defendants say Perpetual violated ECOA.

### IV.

*ECOA as An Affirmative Defense or Counterclaim to an RTC Suit.*

■ Responding to Defendant's plea that Perpetual's violation of ECOA bars RTC's collection of the debt or at least permits them to "recoup" their damages, RTC says that, until Defendants have exhausted their administrative remedies pursuant to 12 U.S.C. § 1821 *et seq.*, this Court lacks subject matter jurisdiction to entertain the ECOA argument, whether by way of defense or counterclaim.[3] Not lacking for rejoinder, Defendants argue that an ECOA violation, either as an affirmative defense and as a counterclaim, is not subject to the exhaustion requirement, particularly insofar as the counterclaim is concerned because RTC has no jurisdiction to consider the ECOA counterclaim and further because such violation is not susceptible to resolution through the RTC claims procedure.

The U.S. Court of Appeals for the Fourth Circuit, in *Brady Development Co., Inc. v. RTC,* 14 F.3d 998 (4th Cir.1994), recently addressed the exhaustion of administrative remedies requirement under FIRREA:

"Congress enacted FIRREA, Pub.L. No. 101–73, 103 Stat. 183, §§ 101–1404, to establish a comprehensive scheme for effi-

ciently administering all claims resulting from failed savings and loan institutions. The statute's purpose was to 'provide funds from public and private sources to deal expeditiously' with faltering and failed savings and loans in order to rebuild their financial foundations. Pub.L. No. 101–73, 103 Stat. 183, § 101. FIRREA establishes procedures for regulating savings and loans, including determining whether an institution is insolvent. It then sets forth a detailed series of rules under which all claims involving an insolvent institution are received and handled. 12 U.S.C. § 1821(d)."

*Id.,* at 1002.

The Court reviewed the specifics of the administrative scheme for processing claims, including the publication and mailing of notices, the time for submission of claims, and the 180 day period allowed for administrative review of the claim. It then discussed a claimant's options if RTC disallows the claim or the 180 day period expires without RTC action, *i.e.* that he has 60 days to seek further administrative determination or judicial relief. *Id.* at 1002–03.

The Court continued:

"To effectuate its goals of managing claims in an expeditious and efficient manner through an administrative process, Congress placed jurisdictional limits on the power of the federal courts to review matters involving failed savings and loans under FIRREA. Congress sought to ensure that all claims undergo the administrative claims process and are under the exclusive control of the RTC. To this end, section 1821(d)(13)(D) provides:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation

**3.** RTC also challenges Defendant Laskin's standing to raise the ECOA defense, an issue the Court finds unnecessary to decide in light of its disposition of the motion.

may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver."

*Id.,* at 1003.

Against this background, Defendants insist that they are not required to pursue the administrative process, but may present the alleged ECOA violation as an affirmative defense or counterclaim to RTC's action to collect the loan.

The Court finds Defendants' arguments to be irrelevant. The great weight of authority holds that, where FIRREA's administrative claims procedure has not been followed, courts, in suits brought by the governmental receiver, lack jurisdiction to entertain affirmative defenses and counterclaims.[4] *See e.g., FDIC v. Updike Bros., Inc.,* 814 F.Supp. 1035 (D.Wyo.1993) (dismissing affirmative defenses of estoppel, laches, breach of duty of good faith and fair dealing, and failure to mitigate damages; denying leave to assert such claims by way of counterclaim); *FSLIC v. McGinnis, Juban, Bevan, Mullins and Patterson, P.C.,* 808 F.Supp. 1263 (E.D.La. 1992) (dismissing affirmative defenses of negligent supervision, contributory negligence, and failure to mitigate damages; suggesting that counterclaim would also be disallowed); *FDIC v. Rusconi,* 796 F.Supp. 581 (D.Me. 1992) (dismissing affirmative defenses and counterclaims including fraud, unfair and deceptive practices, breach of implied covenant of good faith, negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and punitive damages); *FSLIC v. Shelton,* 789 F.Supp. 1367 (M.D.La. 1992) (holding that court is without jurisdiction to hear defenses of contributory negligence, failure to mitigate damages, and estoppel and that counterclaims to same effect would similarly be barred); *RTC v. Dubois,* 771 F.Supp. 154 (M.D.La.1991) (dismissing

affirmative defenses and counterclaims asserting fraud, negligence, impairment of collateral, and wrongful seizure); *but see RTC v. Conner,* 817 F.Supp. 98 (W.D.Okla.1993) (permitting affirmative defenses of failure to mitigate damages, contributory and comparative negligence, set-off, waiver, estoppel and laches, among others).

*FDIC v. Updike* typifies the rationale of these holdings:

"In light of the unambiguous language mandating the exhaustion requirement and in light of Congress' express fear that the costs of litigation would exacerbate an already catastrophic situation, it is patently clear that the jurisdictional bar of section 1821(d)(13)(D) reaches all claims seeking payment from the assets of the affected institution, all claims seeking satisfaction from those assets, and all claims relating to any act or omission of either of the institution or the receiver regardless of whether the action is framed as a claim, counterclaim, or affirmative defense. 12 U.S.C. § 1821(d)(13)(D); 12 U.S.C. § 1821(d)(6); See also *Federal Sav. and Loan Ins. Corp. v. Shelton,* 789 F.Supp. 1367, 1371 (M.D.La.1992). Therefore, we find that the various counterclaims and affirmative defenses asserted by the defendants in this case are 'claims' subject to the exhaustion requirement mandated by FIRREA because they seek a determination of rights with respect to the assets of Guaranty and they relate to acts of both the institution and of the receiver."[5]

814 F.Supp. at 1040.

More surely than some of the affirmative defenses and counterclaims held non-assertable in the various RTC, FDIC and FSLIC cases, *e.g.* estoppel, an ECOA violation gives rise to an action for money damages. *See* 15 U.S.C. 1691e(a). Indeed compensatory and

---

**4.** The alleged ECOA violation is an "affirmative defense" in that it does not deny the allegations of the complaint, but sets forth new matters intended to defeat or reduce Plaintiff's recovery. *See* Fed.R.Civ.Proc. 8(c); *Ingraham v. United States,* 808 F.2d 1075 (5th Cir.1987).

**5.** *But see RTC v. Conner* at 100 ("Affirmative defenses do not seek payment nor are they 'claims' or 'actions,' *i.e.* causes of action. Nor is an affirmative defense an 'action seeking a determination of rights.' 12 U.S.C. § 1821(d)(13)(D)(i).")

punitive damages are precisely what Defendants seek in their counterclaim.[6] If successful, such damages would indisputably be payable out of the assets of the affected institution; hence subjecting the claim to the administrative procedure is fully in order.

While precluding affirmative defenses and counterclaims in RTC cases may run counter to the usual procedure requiring matters relating to the same transaction to be litigated in the same proceeding, *see Fed.R.Civ.Proc.* 8(c) and 13(a), that happens to be the scheme Congress has chosen to put in place. As remarked in *FSLIC v. Shelton:*

> "The Court recognizes the jurisdictional void presented by its interpretation of FIRREA since it is possible to find subject matter jurisdiction over a case while not being able to adjudicate affirmative defenses and counterclaims which arise in the same law suit. However, this anomaly does not allow the Court to create jurisdiction where Congress has expressly forbidden the Court to exercise such authority." 789 F.Supp. at 1373.

A defendant who would assert ECOA must therefore hew to the requirements of RTC's claims process before this Court may consider it. Since Defendants have not done so here, the Court deems it appropriate to strike their third affirmative defense and dismiss their counterclaim.

█ The Court finds no authority for granting Defendants' alternative request that this action be stayed while they seek to obtain administrative review of their claim, *see FDIC v. Updike,* 814 F.Supp. at 1042, and thus declines to grant such relief.

A separate Order accompanies this Opinion.

### ORDER

Upon consideration of Plaintiff/Counter-Defendant's Motion to Dismiss Counterclaim and Motion to Strike Third Affirmative Defense and Defendants' Opposition thereto, it is this 18 day of February, 1994

ORDERED that Plaintiff's Motions be and the same are hereby GRANTED; and it is further

ORDERED that Defendant's Counterclaim herein be and the same is hereby DISMISSED; and it is further

ORDERED that Defendant's Third Affirmative Defense be and the same is hereby STRICKEN.

---

**6.** It is far from clear that an ECOA violation constitutes a bar to collection of the underlying debt, as Defendants would have it. This circuit has yet to dispose upon the question, although at least one district court in the circuit has concluded that ECOA cannot serve as a defense to liability as opposed to being the basis of a counterclaim. *See CMF Virginia Land L.P. v. Brinson,* 806 F.Supp. 90 (E.D.Va.1992).